## NATIONAL LIBERTY INS. CO. OF AMERICA v. POLICE JURY OF NATCHITOCHES PARISH, LA.

## POLICE JURY OF NATCHITOCHES PARISH, LA., v. NATIONAL LIBERTY INS. CO. OF AMERICA.

### No. 8584.

Circuit Court of Appeals, Fifth Circuit.
April 25, 1938.

262

Arthur A. Moreno, of New Orleans, La., and Ben E. Coleman, of Shreveport, La., for appellant and cross-appellee.

Richard H. Switzer, of Shreveport, La., for appellee and cross-appellant.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellee brought this suit, alleging a verbal contract of insurance, to recover $4,690 for loss by fire which destroyed the courthouse of Natchitoches parish and contents; and for a penalty of 12 per cent. and attorneys' fees for failure to pay within 60 days after tender of proof of loss. The case was tried to a jury and resulted in a verdict for $3,940 upon which judgment was entered. By direction of the court the claim for a penalty and attorneys' fees was rejected. The appeal is from the judgment entered on the verdict. The cross-appeal is from the judgment rejecting the claim for a penalty and attorneys' fees. On behalf of appellant, error is assigned to the overruling of pleas of res adjudicata and limitation of one year and to the denial of a directed verdict.

In Louisiana the police juries are the governing bodies of the parishes. which are political subdivisions of the state, the same as counties in other states. There was substantial evidence tending to show the following material facts: The Thomas-Tucker Agency in the town of Natchitoches was the agent of appellant, with authority to write insurance for it and issue policies. G. F. Thomas was its general manager. On March 29, 1933, Thomas made an agreement with Miss Tauzin, secretary of the police jury, to replace a policy in the Globe & Rutgers Fire Insurance Company, of which his agency was the general agent, and which company had been taken over by the insurance commissioner of New York, with a policy in another company. It is not quite clear whether Thomas named the National Liberty Insurance Company at that time. However, the same day he took steps to cancel the Globe & Rutgers policy and issue a new policy covering the same risk in the National Liberty Company. A few days after that, Pope, a representative of the National Liberty Company, called at the office of the Thomas-Tucker Agency, solicited the Globe & Rutgers business for the National Liberty Company, and accepted the policy on the courthouse. Pope told Tucker it would not be necessary to issue a binder and to go ahead and write the business as fast as they could get to it. No binder was issued in this case. Shortly thereafter W. B. Few, president of the police jury, saw Thomas about the matter. Thomas told Few he was going to transfer the risk to the National Liberty Company and Few agreed. A policy in the National Liberty Company, covering the risk, was written to run from March 29, 1933, until March 3, 1935. It was put on Thomas' desk, but he was then absent and did not countersign and deliver it until after the fire, which occurred on April 22, 1933.

Demand was made upon appellant for the payment of the loss and declined. Suit was then brought on the written policy, pursuant to a resolution of the police jury. A verdict was directed for defendant, but reciting "with reservation of whatever rights there may be upon any oral agreement or other arrangement for insurance upon the destroyed property."

Under the law of Louisiana, all fire insurance policies are required to be written on the New York standard form, which contains a provision that no civil action on the policy shall be sustainable unless commenced within twelve months next after the fire. The first suit was commenced within a year after the fire, but the present suit was not.

Conceding, for the sake of argument, that the secretary of the police jury was not authorized to enter into a contract of insurance, there is no doubt the president of that body had authority to ratify what was done by the secretary and to make the contract. It is also certain that Thomas had authority to make a contract binding appellant. The contract contemplated the issuance of a written policy. Preliminary contracts of insurance contemplating the execution of a written policy are of every-day occurrence in business affairs. Usually a written binder is issued to cover the period until the policy is delivered. But they may be verbal and are not subject to any formali-

ties. Franklin F. Insurance Co. v. Colt, 20 Wall. 560, 22 L.Ed. 423; Eames v. Home Insurance Co., 94 U.S. 621, 24 L.Ed. 298. In this case there was only one form of policy that could be executed and there was no uncertainty as to the terms of the contract or the property to be insured. The negotiations above outlined resulted in a valid agreement to insure the property as of a date preceding its loss by fire. The evidence in the record is sufficient to sustain the judgment. It was not error to deny the motion for a directed verdict.

■ There was but one contract of insurance. Both the first and second suits, although differing in form, were on the same cause of action. We are not advised by the record as to the grounds upon which the first suit was dismissed, but with the reservation in the judgment above noted it was tantamount to a judgment of nonsuit. Conceding that both suits were between the same parties on the same cause of action a plea of res adjudicata barring the second suit could not be sustained unless predicated upon a final judgment determining the rights of the parties. 15 R.C.L. 955, § 431, "Judgments." Cf. Haldeman v. U. S., 91 U.S. 584, 23 L.Ed. 433.

■ Assuming, without so deciding, that appellant could invoke the contractual limitation of the written policy, as the case was tried upon that theory, it is evident that the first suit interrupted the running of limitation and the second suit was filed in time. Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488.

It was not error to overrule the pleas of res adjudicata and prescription or limitation. Other errors assigned by appellant are purely technical and do not affect the substantial rights of the parties. The record presents no reversible error on the appeal. To that extent the judgment should be affirmed.

■ Considering the cross-appeal, it is certain that appellant declined to pay any part of the loss, made no efforts to adjust it, and did not tender payment in any amount. Under the law of Louisiana, Act No. 168 of 1908, § 3, if an insurer fails to pay a fire loss within 60 days after receipt of proofs of loss from the insured or, if they are not satisfactory, fails to adjust the loss and make payment within 60 days, the insured is entitled to recover, in addition to the loss, 12 per cent. damages and reasonable attorneys' fees. The act makes no exception in its terms where the insurer in good faith declines to pay, believing it has reasonable grounds for defending against the claim. The decisions of the Louisiana courts construing the act are not entirely harmonious. However, in Isaac Bell, Inc. v. Security Insurance Co., 175 La. 599, 143 So. 705, and Garnier v. Aetna Ins. Co., 181 La. 426, 159 So. 705, it was held that, under the statute, recovery of penalties and attorneys' fees is mandatory in every case where the insurer resists payment of part or the whole loss, provided the insured judicially recovers more than the insurer admits to be due and timely tenders or pays him. We are constrained to follow these decisions.

■ It was error to direct a judgment for defendant on the items of penalties and attorneys' fees. But this does not necessarily require a reversal on the whole case. The awarding of the penalty involves merely a matter of calculation and the determination of the amount of reasonable attorneys' fees would primarily be a matter for the court, not requiring re-examination of the evidence touching the contract of insurance and the amount of the loss. It follows that the judgment may be affirmed in part and reversed in part. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188.

Affirmed on the direct appeal. Reversed on the cross-appeal and remanded for a new trial only on the issues presented thereby. The entire costs on this appeal to be taxed against appellant.