**FIBREBOARD PAPER PRODUCTS COR-PORATION, a Corp., Appellant,**

v.

**EAST BAY UNION OF MACHINISTS, LOCAL 1304, etc., et al., Appellees.**

**No. 19006.**

United States Court of Appeals
Ninth Circuit.

Feb. 3, 1965.

Rehearing Denied April 20, 1965.

---

Marion B. Plant, Charles E. Hanger, E. Judge Elderkin, Brobeck, Phleger & Harrison, San Francisco, Cal., for appellant.

Irwin Leff, Darwin, Rosenthal & Leff, San Francisco, Cal., for appellees.

Before POPE, KOELSCH and DUNI·· WAY, Circuit Judges.

POPE, Circuit Judge.

This is an action brought by the appellee Unions [1] against the appellant, here called Fibreboard, to recover damages on account of an alleged breach by Fibreboard of a collective bargaining agreement between the Union on the one hand and Fibreboard on the other. Answering the complaint, Fibreboard, in addition to denying certain of its allegations, pleaded three separate affirmative defenses which we shall describe shortly. The Union moved to strike these three affirm-

---

1. The complaining Unions are East Bay Union of Machinists, Local 1304, United Steelworkers of America, AFL–CIO, an unincorporated association, and United Steelworkers of America, AFL–CIO; for convenience we treat them collectively, under the name "Union".

ative defenses and the court sustained the motion to strike the second and third and denied the motion to strike the first of such defenses. Pursuant to the trial court's determination that an immediate appeal from such order would materially advance the ultimate termination of the litigation, this court pursuant to the provisions of 28 U.S.C. § 1292(b), granted appellant's application to take this appeal which has now been briefed and argued and is before us for decision.

The record upon which the trial court made its ruling was not limited to the pleadings alone. The ruling took into account other facts, as we shall note. These disclosed that Fibreboard had a manufacturing plant at Emeryville, California; that it carried on its own maintenance work in and about the plant, and its maintenance employees were represented, for purposes of collective bargaining, by the East Bay Union of Machinists, Local 1304, one of the appellee Unions. During the year August 1, 1958 through July 31, 1959, the Union and Fibreboard had a collective bargaining contract in effect which contained a provision for automatic renewal "from year to year thereafter between the respective parties unless either party hereto shall give written notice to the other of its desire to change, modify, or cancel the same at least sixty (60) days prior to expiration." On May 26, 1959, the Union notified Fibreboard that it desired "to modify as of August 1, 1959 the collective bargaining contract dated July 31, 1958, now in effect between the Company and the Union. The Union offers to meet with the Company at such early time and suitable place as may be mutually convenient, for the purpose of negotiating a new contract."

Under date of June 15, 1959, the Union wrote to Fibreboard requesting a meeting to discuss certain "proposed changes in the working arrangement between the parties." These proposed changes related to wage scales, seniority, hours of work and overtime, holidays, night differentials, vacations, a welfare plan and new provisions for adjustment of complaints. Fibreboard did not meet with the Union for these purposes because at that time Fibreboard was studying the possibility of effecting savings in its maintenance work by having the work done by an independent contractor specializing in plant maintenance. It made such a contract with Fluor Maintenance Company, effective August 1, 1959. On July 27, 1959, the Union was told of Fibreboard's decision to contract out the work and that hence "negotiations of a new contract would be pointless." [2]

The complaint alleges that on July 31, 1959, approximately 50 men employed by Fibreboard on maintenance work, who were members of the Union and covered by the collective bargaining agreement, were discharged and locked out by Fibreboard and that this was a breach of the collective bargaining agreement referred to. Defendant, in its answer, alleged that the contract between itself and the Union terminated on July 31, 1959. It admitted that at the end of that day defendant terminated the employment of the individuals theretofore employed in maintenance and power house work in and about its plant. It then pleaded as a separate and first affirmative defense that the contract, of which a copy was attached to the complaint as an exhibit, provided "that all grievances, including claims of the kind asserted in the complaint, shall, if the parties cannot adjust the same by

2. The portions of the record which do not appear in the pleadings themselves are portions of the joint appendix in the case of East Bay Union of Machinists, Local 1304, etc. v. N.L.R.B., 116 U.S. App.D.C. 198, 322 F.2d 411, in which the court reviewed and enforced the order of the Labor Board hereafter referred to. Just how these matters became a part of the record before the district court is not clear. They were not made part of any pleading. They were attached to a brief filed in support of a motion for summary judgment. Both parties treat them as properly a part of the record below. We assume the court could take judicial notice of them as a public document under the rule applied in Zahn v. Transamerica Corporation, 3 cir., 162 F. 2d 36, 48, footnote 20, 172 A.L.R. 495.

negotiation, be submitted to final and binding arbitration." Its second affirmative defense was as follows: "That plaintiffs and defendant herein were parties to proceedings before the National Labor Relations Board in which plaintiffs claimed and asserted that the contract, of which a copy is attached to the Complaint as Exhibit A, was on July 31, 1959, automatically renewed for another year and in which defendant claimed and asserted that the said contract was not on July 31, 1959, renewed automatically or otherwise for another year but that said contract terminated on said date; that the National Labor Relations Board, on March 27, 1961, made and rendered in said proceedings its Decision and Order in and by which the said National Labor Relations Board found and determined that the said contract terminated on July 31, 1959, and was not automatically renewed; that said Decision and Order so holding has become final and is conclusive of the question whether said contract terminated on July 31, 1959."

The third so-called affirmative defense stated in the answer was as follows: "That the Complaint herein fails to join indispensable parties in that it fails to join any of the individuals who were employed by defendant on and prior to July 31, 1959, in powerhouse or maintenance work and who are claimed in said Complaint to be entitled to benefits under said contract." As above indicated, the motion to strike affirmative defenses filed on behalf of the Union was directed against all three of these defenses just described, the second and third of which were stricken. The appeal now before us is from that order.

■ Referring to the third affirmative defense, to the effect that there has been a failure to join the individual members of the Union who are indispensable parties, it is our view that the order striking the defense was proper for the reasons set forth in Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc., 9 Cir., 327

F.2d 442. In that case the plaintiff union brought an action against an employer to require the latter to comply with the provisions of a collective bargaining agreement between the plaintiff union and the defendant employer. It was contended that the action was in essence an attempt by the union to enforce individual wage claims of its members and that such action did not fall within the jurisdiction conferred upon the district court by § 301 (a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). This court held that the action was properly brought and reversed the order of the district court which dismissed the action " 'for lack of jurisdiction over the subject matter.' "

Appellant asserts that that case is not in point here since it merely held that the union could bring a law suit to enforce a collective bargaining agreement. It is true that in that case the phrase "indispensable parties" was not used, perhaps because it never occurred to any one to suggest that a problem of indispensable parties existed. But it seems to us that the holding there necessarily controls upon the point we now discuss. The third affirmative defense was properly stricken.

To fully understand the issues relevant to the striking of the second defense, it is necessary first to outline the issues involved in the Labor Board proceedings, upon which the claim of collateral estoppel is based, and in the instant litigation. In this action, if the decision of the district court is affirmed, the issues ultimately to be decided [3] will be: (a) Did the contract between the Union and Fibreboard terminate on July 31, 1959? If so, the court cannot hold that the employer's conduct was a breach of any contract for there was none; (b) If the contract did not terminate but continued following July 31, 1959, was the act of contracting out the work in violation of the contract either (1) because it was the basis for a grievance procedure within the meaning of the grievance and arbi-

---

3. Initially, of course, the court will have to determine if all or any of these ques-

tions should be decided by the court or by an arbitrator.

tration provisions of the contract so that the employer would be obliged to submit the claimed grievance to arbitration within the meaning of United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409,[4] or (2), if not a proper subject for grievance procedure, because it was in violation of some other provision of the contract. If it should be found that contracting out was not an act either prohibited by the contract or one required by the contract to be submitted to grievance and arbitration proceedings, then again a conclusion of no breach of contract would appear to be indicated. Again, if it be found that failure of Fibreboard to permit discussions under the grievance procedures was a violation of the contract, then it would be necessary to ascertain what, in the way of damages, could be said to be the consequences of such a breach.[5]

■■■ The questions which we thus contemplate as matters to be decided when the present case is heard are not matters properly to be brought before the Labor Board. Recovery in the present

suit must be based upon an existing contract, and its obligations. Issues as to those matters were not, and could not be, before the Board. Its decisions deal solely with questions of unfair labor practices as defined in the Act; and breach of a collective bargaining agreement is not an unfair labor practice. International Union, United Mine Workers, etc. v. NLRB, 103 U.S.App.D.C. 207, 257 F.2d 211, 214-215; Independent Petroleum, etc. v. Esso Stand. Oil Co., 3d cir., 235 F.2d 401, 405; N. L. R. B. v. Pennwoven, Inc., 3d cir., 194 F.2d 521, 524.

An examination of the Labor Board proceedings will disclose that the issues involved there differed materially from those involved in this § 301 suit. The record in the Court of Appeals of the District of Columbia Circuit, to which we have referred, contains a copy of all the essential portions of a certain proceeding initiated before the National Labor Relations Board upon a complaint based upon a charge of the Union growing out of the contracting out here mentioned. The General Counsel alleged in substance that Fibreboard, in terminating the employ-

4. The grievance and arbitration provisions of the Union contract were as follows: "Section XXI. Adjustment of Complaints (a) In case a grievance arises, it shall first be taken up by the Shop Steward of the shop committee of the Union (who shall be recognized by the Plant) with the foreman or shop superintendent and adjusted within forty-eight (48) hours. If no agreement is reached, then the grievance is to be referred and taken up by an executive of the Plant (to be designated by the Plant) and a representative of the Machinists' Union.

"(b) Pending negotiations for settlement of grievances or the Agreement, there shall be no strike or lockout.

"(c) If the Plant and the Union agree an employee has been unjustly discharged, he shall upon being reinstated return to his regular job with seniority unimpaired, and shall receive full pay for time lost.

"(d) In case these efforts at adjustment fail, the subject in question shall be submitted to an impartial arbitrator mutually agreed upon by both parties to this Agreement whose decision shall be final and binding."

For a discussion of the difference between the obligations under a grievance clause in a contract and the obligation to bargain collectively, see the comments of David E. Feller in "Arbitration Journal", Vol. 19, No. 2, 1964, referring to the Labor Board decision here referred to. In Fibreboard Paper Products Corp. v. National Labor Relations Board, 85 S.Ct. 398, the Supreme Court noted: "Provisions relating to contracting out exist in numerous collective bargaining agreements, and 'contracting out work is the basis of many grievances; and that type of claim is grist in the mills of the arbitrators.'"

5. An interesting subject of speculation is whether or not a problem of proximate cause would arise in this situation. When the employer is charged with refusal to conform to the grievance procedures of the contract, can it be proven that had he obeyed these requirements the result would have favored the Union? And is it necessary for the Union to prove that it would have prevailed in such arbitration proceedings in order to prevail here?

ment of the employees above mentioned, and in subcontracting with Fluor the work previously done by them, without first bargaining collectively with the Union with respect to its proposal to contract out this work, had violated §§ 8(a) (1), 8(a) (3) and 8(a) (5) of the National Labor Relations Act.

Following the filing of that complaint hearing was had before a trial examiner who made findings and conclusions that Fibreboard had not engaged in unfair labor practices and recommended that the complaint be dismissed in its entirety. The trial examiner first held that the company was "free to suspend operations for business reasons which are not concerned with protected employee activity;" he then found that Fibreboard's decision to contract out the maintenance work was motivated solely by economic reasons. Accordingly, he held that Fibreboard had not violated the Act by its unilateral decision to contract out its maintenance work.

The trial examiner then turned to the claim that Fibreboard had violated its obligations under § 8(d) by not serving appropriate notices that it was terminating the contract. He found that the contract between Fibreboard and the Union terminated at midnight on July 31, 1959, "not only by its terms but also by reason of [Union's] May 26 notice. * * * Since the [Union's] May 26 notice requesting bargaining meetings looking toward a 'new contract' was timely served, the automatic renewal clause of the contract in question fell with such service, and the undersigned so finds." Upon the basis of that finding the examiner held

that Fibreboard was under no statutory duty to serve any notice called for under § 8(d).

The trial examiner's recommendations for the dismissal of the complaint were thereafter approved and adopted by the National Labor Relations Board. Subsequently, upon a petition filed by the General Counsel the Board granted the charging Union's petition for reconsideration, and upon such reconsideration filed a supplemental decision and order holding that Fibreboard had violated § 8 (a) (5) of the Act by unilaterally subcontracting its maintenance work without bargaining with Union with respect to its decision to do so. Its order contained the usual cease and desist directions and required the taking of certain affirmative action on the part of Fibreboard. Review of that order was sought in the Court of Appeals for the District of Columbia in the case previously mentioned and the Board by cross motion sought enforcement of its order. The order of the Board was enforced. East Bay Union of Machinists, Local 1304, etc. v. N. L. R. B., supra. That decision was affirmed by the Supreme Court, December 14, 1964, Fibreboard Paper Products Corp. v. National Labor Relations Board, supra, footnote 4.

It thus appears that the issues presented in the present § 301 action, and those heard before the Labor Board are entirely different. As noted in United Steelworkers of America, etc. v. American Internat'l Aluminum Corp., 5 cir., 334 F.2d 147, 152, "the problems are not at all alike." [6]

6. The wide gap between issues that the court must decide and issues that the Board decided must be borne in mind when we consider the nature of the remedy which the Board enforced in connection with its order. By way of affirmative action "which the Board finds will effectuate the policies of the Act" the Board directed that the employer "reinstate the maintenance operation previously performed by its employees" and that the employer "offer to those employees immediate and full reinstate-

ment," and reimburse them for loss of pay to the limited extent mentioned in the Board's order. For reasons explained by the Board it limited back pay to earnings which might have been received from and after the Board's final order and not from the date the employer initially terminated the employment.

Obviously the reinstatement was not because of any determination that the union contract continued or would continue to be in effect during this period of reinstatement. As noted by the Supreme

■ Despite the difference in the issues involved in these two proceedings, Fibreboard argues that the above quoted decision of the trial examiner that the contract had terminated operates as a collateral estoppel, and that accordingly its second affirmative defense quoted above should not have been stricken by the trial court. It asserts that the decision of the examiner, described above, was adopted by and became a part of the decision of the Labor Board itself; that thereby the Labor Board adjudged that the contract had terminated on July 31, 1959, by reason of the sixty day notice given by the Union, and that under the rules relating to collateral estoppel by judgment, this decision of the Labor Board had, in the words of the affirmative defense pleaded, "become final and is conclusive of the question whether said contract terminated on July 31, 1959." As provided in § 10 of the Act, (29 U.S.C. § 160), the Unions were allowed to intervene in the proceedings before the examiner and to introduce evidence and to participate in the arguments. Appellant therefore argues that the Unions, through such participation, are subject to the claimed collateral estoppel to question the adjudication that the contract here in question terminated on July 31, 1959.

■■ Even if we assume that a determination of an administrative board may be the basis for a claim of collateral estoppel to be applied in a subsequent action in a court, the established rules of collateral estoppel prevent us from accepting appellant's contention that there is such an estoppel here. One such rule is that a determination before it may become a basis for collateral estoppel must be a final one. Merriam Co. v. Saalfield, 241 U.S. 22, 28, 36 S.Ct. 477, 60 L.Ed. 868; National Liberty Ins. Co.

of America v. Police Jury, 5 cir., 96 F.2d 261, 263; and see Restatement of Law of Judgments § 41, Comment e, and § 68, Comment s. It is also the rule that where estoppel by judgment is asserted, the earlier determination must have been of a question of fact essential to the earlier judgment. As noted in the Restatement of the Law of Judgments, § 68, the problem of collateral estoppel by judgment only arises "[w]here a question of fact *essential to the judgment* is actually litigated and determined by a valid and final judgment." (Emphasis added.) See Comment "o" under that section: "The rules stated in this Section are applicable only where the facts determined are essential to the judgment. Where the jury or the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action." This court has had occasion to apply the rule thus stated. See E. V. Prentice Machinery Co. v. Associated Plywood Mills, 9 cir., 252 F.2d 473, 476–477; Travelers Indemnity Co. v. State Farm Mutual Auto Ins., 9 cir., 330 F.2d 250, 257.

The reason that the limitations on the application of collateral estoppel doctrine which we have here mentioned are particularly applicable in this case is that the Board, after first accepting the recommendation of the trial examiner that the General Counsel's complaint be dismissed, subsequently granted the petition for reconsideration of the Board's decision and order and upon such reconsideration entered a new decision and order in which the Board reached an entirely different conclusion. Thus the first order of the Board was not a final one.

Furthermore, an examination of the decision finally reached in those proceed-

Court in affirming the Labor Board's action, this order for reinstatement was performed by the Board by way of "devising remedies to effectuate the policies of the Act." The Court noted that "in fashioning remedies to undo the effects of violations of the Act, the Board must draw on the enlightenment gained from experience." The Court held that these remedies were not shown to be inappropriate. In other words, the order of reinstatement had nothing to do with whether the contract did or did not continue beyond July 31, 1959.

ings demonstrates that the question of contract termination was in no manner essential to that decision.

§ 8(a) (5) makes it an unfair labor practice for the employee "to refuse to bargain collectively with the representatives of his employees," and § 8(d), defining what is meant by the duty to bargain collectively, provides that it is "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, * * *" What the Board in this final decision held was simply that a management decision to subcontract work out of an existing unit was a mandatory subject of collective bargaining under the Act. In short, it simply held that contracting out is a matter relating to "other terms and conditions of employment." The Supreme Court in Fibreboard Paper Products Corp. v. National Labor Relations Board, supra, affirming the judgment enforcing the Board's order, defined this final ruling of the Board as follows: "This ruling was based upon the doctrine established in Town & Country Mfg. Co., 136 N.L.R.B. 1022, 1027, enforcement granted, 316 F.2d 846 (C.A. 5th Cir., 1963), that contracting out work, 'albeit for economic reasons, is a matter within the statutory phrase "other terms and conditions of employment" and is a mandatory subject of collective bargaining within the meaning of § 8(a) (5) of the Act.'" In reaching that conclusion, whether the contract was or was not a continuing one was wholly immaterial. As stated by the appellees here "The obligation of Fibre-

board to bargain existed whether there was a continuing contract or not. A finding that the contract terminated was not necessary for the Board's decision and played no part in the point finally and actually litigated and decided, the § 8(a) (5) violation." With this we agree. Thus it is plain that the finding of the trial examiner with respect to the termination of the contract was in no sense essential to the final decision of the Board.[7]

We are therefore of the view that the order of the trial court here in question was a proper one and accordingly the same is affirmed.

Upon Petition for Rehearing

Before POPE, KOELSCH and DUNIWAY, Circuit Judges.

POPE, Circuit Judge.

Because petitioner in an application for rehearing undertakes to challenge propositions stated in the opinion which we thought and continue to think are self-evident, we proceed to make the following comments upon appellant's claim that it has a right to plead collateral estoppel in its answer.

The petition contains the following statement: "We take no exception at this point to the Court's conclusion that the finding of termination of the contract was not essential to the holding that Fibreboard violated the Act by contracting out the work without first negotiating with the Union. Our quarrel is with the underlying premise that this is all that the Board held. The Board also held that Fibreboard did *not* violate the Act in failing to give the notices for

---

7. It may even be suggested on the basis of the record that such finding of the trial examiner with respect to the termination of the contract was accepted by the Board neither in its final nor in its first decision. The record indicates that the Board's first decision was based not upon any finding of termination of the contract but upon the Board's view that an employer's decision to subcontract was a management prerogative having nothing to do with the "terms and conditions

of employment" as defined in the Act. When the Board in its final decision referred to its earlier decision, it described that decision as follows: "In their view, Respondent's decision to subcontract was a management prerogative having no impact on the conditions of employment within the existing maintenance unit, and hence need not have been submitted to the Charging Union before that decision was effectuated."

which section 8(d)(3) provides. Its finding that the contract had terminated plainly *was* essential to that holding."

■ We think this discloses a failure to understand what the Labor Board actually decided. The trial examiner first held in respect to the charge that Fibreboard had been guilty of an unfair labor practice in failing to bargain collectively with the Union that there was no duty so to bargain because the contract had been terminated as a result of the Union's notice to the employer, and hence that there was no obligation to serve the notice called for by § 8(d) of the Act which defines what constitutes collective bargaining. After the Board granted a rehearing it held that Fibreboard was under a duty to bargain collectively in any event. Because of this decision, whether the § 8(d) notice was or was not given or called for, and the whole question of termination, was no longer involved. It would have been a complete absurdity for the Board to say: "Yes, you must bargain, but the contract was terminated." At that stage whether the contract was terminated or not was completely irrelevant and wholly outside the line of decision. The whole matter of termination simply fell to the ground for that reason.

This is further demonstrated when we consider that the final decision of the Board supported the Union in its charge of an unfair labor practice in its failure to bargain collectively. Thus the Union had won on this point; and it was in no position to appeal or seek review in respect to its claim of a failure to bargain collectively either as respects § 8(a)(5) or the related § 8(d) which defines what is meant by the duty to bargain collectively.

The Union did seek review in respect to other matters. As noted in East Bay Union of Machinists, Local 1304, etc. v. N. L. R. B., 116 U.S.App.D.C. 198, 322 F.2d 411, 413, "The Union challenges (a) the Board's failure to find a violation of Section 8(a)(3) and (b) the Board's failure to make the remedial order of back pay operative to the date of termination of employment." The Union sought no review of the order relating to the claimed violation of § 8(a)(5) for the plain reason that it was not aggrieved on that point; and it could not have urged any point with respect to the notices under § 8(d). Appellant's attempt to assert collateral estoppel in respect to an alleged finding of termination must therefore fail under the rule stated in Restatement of the Law of Judgments, § 69(2).[1]

■ As Professor Davis points out (Administrative Law Treatise, Vol. 2, § 18.02), while the doctrine of res judicata is applicable to "*some* administrative proceedings" the cases "add up to the sound proposition that administrative decisions are sometimes res judicata and sometimes not." Although this matter was not discussed in our original opinion it would appear to be plain that under the circumstances here present the doctrine of collateral estoppel (or res judicata, as Professor Davis calls it,) would not be applicable here.

The petition for rehearing is denied.

---

1. Note particularly the Comment on this subsection as follows: "Comment on Subsection (2): c. *Where there is a finding of one issue against the successful party.* Where a judgment is rendered by a court of first instance in favor of a party, but a particular issue is decided against him, and because the judgment is rendered in his favor he has no ground for appealing from the judgment, the finding on the particular issue decided against him is not conclusive in a subsequent action between the parties based upon a different cause of action. Thus, if the defendant interposes two defenses, either of which is sufficient to bar the plaintiff's claim, and there is a finding for the defendant on one of the issues, a finding for the plaintiff on the other issue is not binding in a subsequent action upon a different cause of action. One reason for this is that the finding is not material to the judgment (see § 68, Comment *o*); another reason is that the defendant, having been successful in the action, cannot appeal and obtain the ruling of the appellate court as to the finding against him."