704 F.2d 1443
 113 L.R.R.M. (BNA) 2383, 97 Lab.Cas. P 10,096
 RAINBOW TOURS, INC., dba Rainbow Coaches, Plaintiff-Appellee,
v.
HAWAII JOINT COUNCIL OF TEAMSTERS, Hawaii Teamsters & Allied
Workers Union, Local 996,* IBT, a
labor organization, Defendants-Appellants.
 No. 81-4414.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 9, 1982.
Decided May 3, 1983.
 
 Jared Jossem, Jeffrey S. Harris, Honolulu, Hawaii, for plaintiff-appellee.
 John R. Desha, II, Honolulu, Hawaii, for defendants-appellants.
 Appeal from the United States District Court for the District of Hawaii.
 Before KASHIWA,** ANDERSON, and FERGUSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Rainbow Tours ("Rainbow") brought an action for damages against the Hawaii Joint Council of Teamsters and its Local 996 (the "Union"). After a bench trial, District Judge Heen awarded Rainbow $13,800.21 in damages and $1,591.96 in attorney's fees. We reverse and remand.
 
 I. FACTS
 
 2
 Rainbow is and was a tour bus company based in Honolulu. It provides ground transportation services to various tourist agencies in the Honolulu area. In 1976, Steven Kolt became a part owner and president of the company and adopted its present name. Kolt has several years of experience in the tour transportation industry.
 
 
 3
 In 1976, Rainbow was a non-union business. In the latter part of that year and early the next year, some employees began inquiring into joining a union. Soon thereafter, on the morning of January 29, 1977, the Union picketed the Rainbow yard. Approximately 30-40 pickets were involved. The pickets were somewhat threatening and unruly, and temporarily blocked ingress and egress to the Rainbow yard. Kolt testified only six of his twenty busses were able to go out that day.
 
 
 4
 Rainbow immediately sought to enjoin the picketing in Hawaii state court. On February 2, 1977, the Union agreed before the state court judge to reduce the number of pickets to two. This reduction began on February 3.[1] The picketing continued in that fashion until February 18, 1977. The state court action was eventually dismissed.[2]
 
 
 5
 On February 1, 1977, Rainbow commenced the lawsuit that is the subject of this appeal. Rainbow brought two counts. The first alleged violations cognizable under Sec. 303 of the Labor Management Relations Act, 29 U.S.C. Sec. 187. In this count, Rainbow claimed the Union's picketing constituted secondary activity made unlawful as an unfair labor practice by 29 U.S.C. Sec. 158(b)(4). The second count, a pendent state law claim, alleged the union had engaged in unlawful mass picketing which tortiously interfered with Rainbow's employment contracts and resulted in a loss of business.
 
 
 6
 On March 2, 1977, the Union and two former Rainbow employees filed unfair labor practice charges with the National Labor Relations Board ("NLRB"). They alleged Rainbow had unlawfully interfered with its employees' Sec. 7 rights, 29 U.S.C. Sec. 157, by threatening and terminating several of them. Rainbow answered that the Union had engaged in activity violative of 29 U.S.C. Secs. 158(b)(1)(A) (coercing employees in the exercise of their Sec. 7 rights), (b)(4) (illegal secondary conduct), and (b)(7) (illegal recognitional picketing where no petition had been timely filed). The NLRB consolidated the complaints and a hearing was held from July 6 to July 13, 1977.
 
 
 7
 The Administrative Law Judge ("ALJ") entered his decision on March 29, 1978. The NLRB affirmed the ALJ's findings and adopted his order with minor modifications. 241 N.L.R.B. 589 (1979). The NLRB rejected Rainbow's claims and found for the Union. Briefly summarized, the Board held:
 
 
 8
 (1) the picketing was not unlawful either as being recognitional, a restraint of trade, or secondary activity;
 
 
 9
 (2) even if some of the employees originally refused to cross the picket line because of fear of bodily harm, there was substantial union-principle motivation at the time of the discharges and therefore the conduct was protected; and
 
 
 10
 (3) the discharges were not justified by the business preservation doctrine.
 
 
 11
 The NLRB's order was appealed to this court. In a memorandum decision the Board's decision was upheld. NLRB v. Rainbow Tours, 628 F.2d 1357 (9th Cir.1980).
 
 
 12
 Returning to the prior history of this case on appeal, the Union filed a motion in May of 1981 seeking dismissal of Rainbow's complaint because of the collateral estoppel effect of the prior NLRB proceeding. The motion was denied and the court conducted a bench trial in June. District Judge Heen granted judgment to the Union on the Sec. 303 count and found for Rainbow on the tortious interference claim. Damages in the amount of $13,800.21 and $1,591 in attorney's fees were awarded. The Union appealed.
 
 II. DISCUSSION
 
 13
 The Union argues the district court erred in two respects. First, it contends the prior NLRB proceeding collaterally estops Rainbow from relitigating the issues already decided; because those issues were decided in favor of the Union, the action should have been dismissed. Second, the Union argues the district court erred in finding the Union had tortiously interfered with Rainbow's employee contracts.
 
 A. Collateral Estoppel
 
 14
 Neither party disputes that findings on issues decided in NLRB proceedings are entitled to collateral estoppel effect. Paramount Transport Systems v. Chauffeurs, Teamsters and Helpers, Local 150, 436 F.2d 1064, 1066 (9th Cir.1971); see also Edna Pagel, Inc. v. Teamsters Local Union 595, 667 F.2d 1275, 1279-1280 (9th Cir.1982); Fibreboard Paper Products Corp. v. East Bay Union of Machinists Local 1304, 344 F.2d 300, 306 (9th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965). The requirements for the application of collateral estoppel are that the findings be made on material issues, they be supported by substantial evidence, and the NLRB proceeding must have complied with due process. Paramount, 436 F.2d at 1066.
 
 
 15
 We have no difficulty in finding the NLRB proceeding comported with due process. Our inquiry, then, is whether the findings upon material issues decided in the prior proceeding foreclosed the district court's judgment in this case. In this determination, we must closely compare the action brought in federal court with the prior NLRB proceeding.
 
 
 16
 Rainbow's state law claim simply alleged that commencing on January 29, 1977 the Union engaged in "mass picketing" which tortiously interfered with Rainbow's employee contracts by causing the employees to fail to report to work. The district judge believed the evidence sustained the claim. He found that on the first day of the picketing, January 29, 1977: (1) 30-40 Teamsters picketed Rainbow's yard; (2) the picketers were somewhat unruly and threatening; (3) they temporarily blocked ingress and egress to the yard; (4) they pounded on Mr. Kolt's car as he drove into the yard; and (5) because several of Rainbow's employees did not cross the picket line, only six out of twenty busses went out. The court found on the second day, January 30, 1977, the picketers again blocked ingress and egress and generally engaged in the same type of activity. The court made no findings regarding the character of the picketing after the first and second days. It simply found Rainbow had suffered losses due to cancellations and "farm outs" on the subsequent days.
 
 
 17
 There is no doubt the NLRB proceeding involved the same series of events as that in the district court. We do not believe, however, the issues and facts determined by the NLRB prevented litigation of Rainbow's tortious interference claim.
 
 
 18
 The pertinent findings and conclusions of the NLRB are those concerning the discharge of the employees. Rainbow claimed the picket line was itself unlawful so the employees were not engaged in protected conduct when they respected the line. Rainbow also argued the employees respected the picket line because of fear of bodily harm, not because of union-principle motivation. The NLRB held the picketing was not unlawful because there was no proof of an antitrust violation, the picketing was not secondary activity, and even if the picketing was recognitional, it was permissible. Read broadly, the NLRB holding was simply that the picketing was lawful in all respects. Such a holding, we believe, would prevent a claim of tortious interference. It simply would not comport with our labor laws to allow an employer to sue a union for interference with its business when the union had engaged in protected conduct in an effort to change business policy. See Sears, Roebuck & Co. v. San Diego District Council of Carpenters, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).
 
 
 19
 Viewed in light of Rainbow's claim the employees were afraid to cross the picket line because of fear, however, it becomes evident the NLRB's holding was not so broad. The focus of the decision was on the right of the employees to respect the line. Under NLRB precedent, it was not necessary to determine the exact motives of the employees for not crossing the line. Congoleum Industries, Inc., 197 N.L.R.B. 534 (1972). The Board found that some of the employees stayed out on January 29 and 30 because of fear; others did so for principle. As of January 31, the Board found all the employees refused to cross the picket line primarily because of union principle. Collateral estoppel is applicable only to those findings necessary to the decision in the prior proceeding. Fibreboard, supra, 344 F.2d at 306. NLRB precedent made it unnecessary for the Board to make exact findings on the question of fear. In this context we believe the NLRB decided only that the object of the picketing was lawful. It did not decide whether the means used to attain that objective were lawful. We hold, therefore, that collateral estoppel does not mandate a total preclusion of Rainbow's claim.
 
 
 20
 B. Tortious Interference Through Mass Picketing
 
 
 21
 Our conclusion that Rainbow's claim was not totally precluded by collateral estoppel is based in part on the nature of a claim of illegal mass picketing. Mass picketing has been described as when "individual pickets are so numerous and stationed so close together that, if access to the plant is blocked, the conduct is treated akin to a seizure of the plant, giving promise of violence when the nonstrikers seek to force through the line." R. Gorman, Basic Text on Labor Law 217 (1976), citing W.T. Rawleigh Co. v. NLRB, 190 F.2d 832 (7th Cir.1951). While mass picketing may constitute an unfair labor practice under section 8(b)(1), 29 U.S.C. Sec. 158(b)(1), it has also been recognized to give rise to possible state tort liability. In International Union v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), the Supreme Court upheld the right of an employee to sue a union which had engaged in a mass strike and threatened violence, preventing the employee from crossing the picket line. The Court, citing United Construction Workers v. Laburnum, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), found the activity clearly unprotected by federal law. 356 U.S. at 640, 78 S.Ct. at 936, 2 L.Ed.2d at 1036. The Court went on to hold the state action was not preempted by federal labor law. Similarly, we believe an employer should be able to recover damages when a union engages in unlawful mass picketing. But that right of recovery is not without limitations, especially as here when the NLRB already determined many of the issues involved in the same transaction.
 
 
 22
 As noted, the prior NLRB proceeding focused primarily on whether the employees who respected the picket line could properly be discharged by Rainbow. In holding the discharges improper, it was unnecessary for the Board to make exact findings on the issues concerning mass picketing and threats of violence. The district court did, however, find the facts to be such to support Rainbow's claim the Union engaged in illegal mass picketing. We see no clear error in that finding as the evidence is not really in dispute that the Union blocked ingress and egress to the yard and threatened those who tried to cross the picket line. We do, however, find error in the broad scope of the district court's decision.
 
 
 23
 The district court awarded damages for Rainbow's loss of business which occurred from January 29 to February 7, 1977. The evidence shows, however, as of February 3, 1977 the number of pickets was reduced to two. We question, then, the propriety of awarding damages after February 2, 1977. At that point, the Union was not engaged in unlawful mass picketing. Additionally, the district court made findings which support the mass picketing claim only as to January 29 and 30. No findings the Union engaged in mass picketing or threatening conduct after January 30 were made. Relatedly, in the prior proceeding the Board found that as of January 31, 1977, the employees who failed to report to work did so because of union principle motivation. As this finding was supported by the evidence and was necessary to the Board's decision, it is binding on the trier of fact in this later action. Rainbow's claim is that the union activity caused its employees to fail to report to work, which resulted in a loss of business. If, as of January 31, 1977, the employees refused to work for reasons valid under the labor laws, we do not believe Rainbow can recover damages which resulted from the same refusal to work. Finally, the Board found Kolt discharged the employees on the night of January 31 for failing to return to work under his terms. The employees were lawfully refusing to work at that time; Kolt's loss of business after January 31 was caused not by the Union, but by his own action in firing the employees. We hold that, in light of the NLRB findings, the Union cannot be liable for damages resulting from the employees' refusal to work after January 30, 1977.[3]
 
 
 24
 We also find the district court erred by not giving the NLRB findings a limited collateral estoppel effect as to the events of January 29 and 30. Particularly, the Board found that on those days there was a mixed motive for observing the picket line. For some it was because of union principle motive; for others it was because of fear. In a case such as this when the object of a union's conduct is protected but the tactics used to attain that end are not, we believe the district court should award damages only for the losses directly resulting from the unlawful activity. United Mine Workers v. Gibbs, 383 U.S. 715, 729, 86 S.Ct. 1130, 1140, 16 L.Ed.2d 218, 230 (1966); see also Teamsters Local Union 20 v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964). If the direct cause of the loss is not separable, the court should apply the rule developed in Mead v. Retail Clerks Local 839, 523 F.2d 1371, 1374 (9th Cir.1975): "[W]hen a union exerts economic pressure to achieve both lawful and unlawful objectives and the consequences are not separable, damages cannot be recovered unless the unlawful objective was a substantial cause of the pressure." General tort principles apply and therefore "substantial cause" does not mean sole or predominate cause, but simply a materially contributing factor. Id. at 1376; accord, Frito-Lay, Inc. v. Local Union No. 137, Int'l Brotherhood of Teamsters, 623 F.2d 1354, 1362-1363 (9th Cir.), cert. denied, 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980). While the Mead standard was developed for use in claims brought under Sec. 303 of the Labor Management Relations Act, 29 U.S.C. Sec. 187, we believe principles of preemption mandate its use in state law claims involving conduct partially protected and partially prohibited by federal labor law. See Gibbs, supra, 383 U.S. at 732, 86 S.Ct. at 1142, 16 L.Ed.2d at 231.
 
 III. CONCLUSION
 
 25
 In sum, we hold the Union may not be liable for interfering with Rainbow's employees' contracts after January 30, 1977. At that point, the employees' refusal to work was caused by union-principle motivation, not the Union's mass picketing or threats, if in fact the Union continued to engage in that conduct at that time. The Union may be liable for the loss of business on January 29 and 30, however, if the district court finds the Union's unlawful conduct to be a material factor in the refusal of the Rainbow employees to work.
 
 The judgment of the district court is
 
 26
 REVERSED and REMANDED for further proceedings not inconsistent with this opinion.
 
 
 27
 Costs are awarded to appellants.
 
 
 
 *
 The caption is changed from "LOCAL 999" to correctly state "LOCAL 996."
 
 
 **
 The Honorable Shiro Kashiwa, United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 Judge Heen found the Union reduced the number of pickets to two on February 7, 1977. This is clear error. References in the transcript and even appellee's brief are clear that the Union agreed to reduce the pickets to two on February 2 and that this in fact occurred beginning on February 3. See, e.g., Reporter's Transcript, Vol. III, at 45-46 and 50; Appellee's Brief at 8
 
 
 [2]
 We do not discuss the possible res judicata effect of this prior state court action. Res judicata is an affirmative defense that is waived if not specially pleaded. Santos v. Alaska Bar Ass'n, 618 F.2d 575, 576-77 (9th Cir.1980). The Union neither raised this issue below nor on appeal. Nothing in this opinion, however, forecloses the Union from amending its pleadings in the district court to assert the plea. See Blonder-Tongue v. University, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453-1454, 28 L.Ed.2d 788 (1971)
 
 
 [3]
 Rainbow argues that the Union waived this argument by failing to present it to the district court. While we would have preferred more specificity in the Union's claim, it is sufficient that the Union repeatedly raised the collateral estoppel claim before the district court. Our decision is not based on a general interpretation of Hawaii tort law but simply upon the scope and binding effect of the findings in a prior labor proceeding. We note, however, that the district court apparently relied upon the Restatement (Second) of Torts (1979) as a guide for the interpretation of the tort of interference with contract. Under the guidelines of Secs. 766 and 767, it would appear the conduct at issue here, at least as of January 31, was privileged and not improper