Lauriat, J.
This action arises out of an alleged wrongful termination and presents the issue of *182 whether certain state claims are preempted by federal labor law.
Plaintiff, William F. Rae, Jr. (“Rae”), brought this action against defendants, Laborers’ International Union of America, Local 223 (the “Union” or “Local 223”), Dermis Willette (“Willette”), and Martin Walsh (“Walsh”), alleging tortious interference with contractual and advantageous relations, and negligent and intentional infliction of emotional distress. The Union, Willette, and Walsh (collectively, “defendants”), have now moved for summary judgment on the grounds that Rae’s claims are preempted by federal law under the National Labor Relations Act (“NLRA”)[1] and Labor Management Relations Act (“LMRA”).[2] For the following reasons, defendants’ motion for summary judgment is denied.
BACKGROUND
The following facts are taken from the summary judgment record. Certain of the facts, where indicated, are in dispute. Rae, Willette, and Walsh are all members of Local 223. In 1991, Rae and Willette were employed on a construction project at the Boston University Advanced Biomedical Research Center (the “BU Project”) in Boston, Massachusetts. Morganti, Inc. (“Morganti”) was the general contractor for the BU Project.
Morganti and Local 223 signed a Project Labor Agreement (“PLA”) covering the BU Project. The PLA incorporates by reference the collective bargaining agreement (“CBA”) between Morganti and the Union. The “Management Rights” section of the PLA provides that Morganti retains full management rights and may discipline or discharge any employee for just cause.
In early 1991, Morganti chose Rae as its foreman on the BU Project. Rae’s duties as foreman included assigning and overseeing Union member work. Walsh, Local 223’s business agent and manager, appointed Willette as Local 223’s BU Project labor steward. Willette’s duties included hearing and resolving complaints from Union members.
Events that follow are disputed. Rae claims he had no difficulty with any other laborers, except Willette, whom he alleges threatened him. Rae also alleges that Willette has a history of union-related violence. Defendants counter that many Local 223 laborers did not get along with Rae. On August 27, 1993, Rae and another Union member, Sean Hughes (“Hughes”),[3] had a physical confrontation regarding a doctor’s note excusing Hughes from work. A second off-site physical confrontation between Rae and Hughes occurred shortly thereafter. Hughes reported the incidents to Willette, who told Walsh. Several laborers also approached Walsh and told him they would no longer work for Rae. Walsh reported the altercations to John Vinciguerra,[4] Morganti’s vice president, who asked Rae to resign.
Rae claims that Vinciguerra was forced to terminate Rae because Walsh and Willette were threatening to derail the BU Project. Rae claims that this was due to the “bad blood” between himself and Willette. Rae also claims that the confrontations with Hughes were due to Hughes’ alleged drug and marital problems. Rae contends that Willette and Walsh seized upon the confrontations as an opportunity to terminate Rae. Morganti terminated Rae from his position as foreman when he refused to voluntarily resign.
Following his meeting with Vinciguerra, Rae reported to the New England Medical Center Emergency Room with chest pains. He was treated and released the next day. Beginning on September 23, 1993, Rae was treated for depression, anxiety, insomnia, emotional distress, heart and arteiy disease. Rae’s doctors opined that this was a result of Rae’s termination from his job. Rae continues to be treated with psychotherapy and heart medication.
After Morganti terminated Rae, Rae filed a claim for workers’ compensation with the Industrial Accidents Board and received a $45,000 lump sum from Morganti in December 1995, in addition to social secuiify benefits. On September 1, 1993, Rae filed an unfair labor practice charge against Local 223 with Region I of the National Labor Relations Board (“NLRB”). Rae withdrew that charge on October 15, 1993, but filed a new charge alleging that Local 223 had coerced Morganti to dismiss him, and that Rae’s grievance was not properly handled by Morganti or the Union. The NLRB dismissed Rae’s charge as meritless on November 24,1993. Rae appealed to the NLRB’s Regional Director who denied the appeal on January 27, 1994.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment in its favor. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case, or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving pariy establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment." Pederson, 404 Mass. *183 at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
In ruling on a motion for summary judgment, the court must not consider the “credibility of the witnesses or the weight of the evidence, nor should the [court] make findings of fact.” Riley v. Presnell, 409 Mass. 239, 244 (1991), citing Attorney General v. Am, 386 Mass. 367, 370 (1982). However, “the movant is held to a stringent standard . . . [A]ny doubt as to the existence of a genuine issue of material fact will be resolved against the movant.” 10A C. Wright, A.R. Miller & M. Kane, Federal Practice and Procedure, §2727, at 125 (1983) (construing Fed.R.Civ.P. 56).
Defendants have asserted their right to summary judgment on two grounds. First, defendants contend that Rae’s claims are preempted under federal law by the NLRA or the LMRA. Alternatively, defendants argue that even if Rae’s claims are not preempted by federal labor law, Rae cannot establish essential elements of his claims. Therefore, defendants contend that they are entitled to judgment as a matter of law.
Rae counters that his claims are not preempted by federal labor law and are instead to be determined under state law. Rae also maintains that he has met his burden under the summary judgment standard by establishing all essential elements of his claims against the defendants and that genuine issues of material fact are in dispute.
I.
Rae has sued Local 223, Willette and Walsh, alleging that (1) they interfered with his contractual relations with his employer, Morganti (Counts I, V, and IX); (2) interfered -with his advantageous relations with Morganti (Counts III, VII and XI); (3) intentionally inflicted emotional distress (Counts III, VII, and XI); and (4) negligently inflicted emotional distress (Counts IV, VII, and XIII). Defendants contend that all of Rae’s claims are preempted by federal labor law.
Whether federal labor law preempts Rae’s claims is determined by the standard articulated by the U.S. Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). In that case, the Court held that,
[w]hen it is clear or may be fairly assumed that the activities which a state purports to regulate are protected by §7[5] of the [NLRA], or constitute an unfair labor practice under §8,[6] due regard for the federal enactment requires that state jurisdiction must yield.
Garmon, 359 U.S. at 244 (footnotes added). The Court identified two exceptions to federal preemption under the NLRA. That is, state law claims are no<. preempted
where the activity regulated was merely a peripheral concern of the LMRA or where the regulated conduct touches interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional directive, [it] could not [be] infer[red] that Congress had derived the states of the power to act.
Garmon, 359 U.S. at 243-44. The Garmon standard is not to be applied inflexibly. Sears, Roebuck & Co. v. San Diego County Dist. Council Of Carpenters, 436 U.S. 180, 188 (1978) (states may retain jurisdiction over trespass actions).
The Supreme Court has considered the Garmon standard in light of various claims arising under state law, including an intentional interference with contractual relations claim, and whether these claims were preempted by the NLRA. In Local No. 27, International Association of Bridge, Structural And Ornamental Iron Workers Union v. Perko, 373 U.S. 701 (1963), the Court held that a former union foreman’s claim of intentional interference with contractual relations claim was preempted by the NLRA after union members allegedly conspired to have him removed as foreman. The Court ruled that the state law claim was preempted because “if a union forces an employer to discharge a supervisor, such conduct may well violate §8(b)(1)(B) because it coerces the employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances." Perko, 373 U.S. at 708.
The Court has also considered whether a plaintiffs intentional infliction of emotional distress claim is preempted by federal labor law. In Farmer, Special Administrator v. United Bhd. of Carpenters & Joiners of Am., Local 25, 430 U.S. 290 (1977), the Court held that a union vice president’s state law claim for intentional infliction of emotional distress was not preempted by the NLRA. There, the union vice president claimed that the union had subjected him to public ridicule regarding union hiring policies. Id. at 293. The Court held that,
[n]othing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute, and thus there is no risk that state damages actions will fetter the exercise of rights protected by the NLRA... [S]tate court actions to redress injuries caused by violence or threats of violence are consistent with effective administration of the federal scheme; Such actions can be adjudicated without regard to the merits of the underlying labor controversy.
Farmer, 430 U.S. at 299 (citations omitted). In addition, the Court has held ”[s]tate law has been displaced by [federal labor law] in private damage actions based on peaceful union secondary activities.” Local 20, Teamster, Chauffeurs & Helpers Union v. Morton, 377 U.S. 252, 261 (1964) (emphasis added).
Here, Rae’s claims seem juxtaposed between the state and federal systems. Traditionally, state courts have been receptive to intentional infliction of emotional distress claims, but Rae’s claims dealing with tortious interference with contractual relationships and advantageous relationships appear, at least ini *184 tially, to relate directly to the agreement between Morganti and Local 223, and are thus governed by federal labor law. Considering the crux of Rae’s complaint, however, the court concludes that all of Rae’s claims can be adjudicated in state court without impinging on the merits of any underlying labor dispute.
Rae’s claims — intentional infliction of emotional distress; negligent infliction of emotional distress; intentional interference with contractual relations; and intentional, interference with advantageous relations — arise out of facts which are peripheral to the purpose of federal labor law. In addition, Rae has alleged that members of Local 223 engaged in threatening conduct. Violence, threats, and intimidation are not protected activities under §7 nor prohibited by §8, and are thus not subject to federal preemption. There is no indication that this court’s retaining jurisdiction over Rae’s claims will interfere with federal labor law. See Sears, Roebuck & Co., 436 U.S. at 198.
As discussed above, the Supreme Court has held that intentional infliction of emotional distress claims arising out of tortious activity fall outside of the federal regulatory scheme. See Farmer, supra It follows that negligent infliction of emotional distress arising out of tortious activity is also not preempted by federal labor law. Therefore, these two claims may be properly decided under state law.
The Supreme Court has also held a plaintiffs intentional interference with contractual relations claim was preempted by the federal regulatory scheme. See Local 207, supra. The Garmon doctrine is not to be mechanically applied, however. Sears, Roebuck & Co. 436 U.S. at 188. Indeed, a number of courts have concluded on several occasions that tortious interference with contractual and advantageous relations may not always fall within the purview of federal labor law. See, e.g., Rainbow Tours v. Hawaii Joint Council of Teamsters, 704 F.2d 1443, 1447-48 (9th Cir. 1983); Kerry Coal Co. v. United Mine Workers of America, 637 F.2d 957, 964-65 (3d Cir. 1981) cert. denied, 454 U.S. 823 (1981); R.M. Perlman, Inc. v. New York Coat Suit Dresses Rainwear and Allied Workers Local 89-22-1, 789 F.Sup. 127, 129-30 (S.D.N.Y. 1992); Sun Refining Co. v. Trades Council, 117 LRRM 2127, 2137 (E.D. Pa. 1984); Charles D. Bonanno Linen Service, Inc. v. McCarthy, 550 F.Sup. 231, 240-41 (D.Mass. 1982), aff'd on other grounds, 708 F.2d 1 (1st Cir. 1983), cert. denied 464 U.S. 936 (1984); Rockford Redi-Mix, Inc. v. Teamsters Local 325, 551 N.E.2d 1333, 1338-40 (Ill.App.Ct. 1990); Coles Express, Inc. v. International Brotherhood of Teamsters Local 526, 4 Mass. L. Rptr. No. 24, 527 (Feb. 5, 1996) (Garsh, J.). This is especially true when tortious interference with contractual or advantageous relations arises out of situations where violence has occurred or has been threatened. See, e.g., Coles Express, Inc., 4 Mass. L. Rptr. at 528.
Here, Rae’s claims for intentional interference with contractual relations and intentional interference with advantageous relations arise out of allegedly violent circumstances. Specifically, Rae’s complaint alleges that Willette and Walsh, among other Local 223 members, engaged in a pattern of intimidation, threats, and coercion, designed to compel Morganti to fire him. Accordingly, Rae’s tortious interference with contractual and advantageous relations are not preempted by the Garmon doctrine, as this alleged activity is neither protected by §7 nor prohibited by §8.
The defendants contend that even Rae recognized that his claims should be preempted by the NLRB because he initially filed his unfair labor charges against defendants with the NLRB. The NLRB, however, found Rae’s charges without merit, and dismissed his charges. Defendants also assert that Rae has simply repackaged his NLRB claims as state-law claims in an attempt to avoid the preclusive effect of an adverse NLRB decision. This court disagrees. Although it is unclear from the summary judgment record what claims and issues were before the NLRB, if the NLRB followed its federal mandate, it would have examined whether Local 223 violated §7 and §8 of the NLRA. There is nothing in the summary judgment record, however, to suggest that the NLRB heard the issues that are now before this court. Moreover, the NLRB lacks jurisdiction to adjudicate these state law claims. Accordingly, the court rejects defendants’ argument and concludes that Rae’s claims are not preempted by the NLRA.
II
The defendants also contend that a determination of whether defendants intentionally interfered with Rae’s contractual rights or advantageous relations would require interpretation of the CBA and/or the PLA. Thus, the defendants argue that §301 of the LMRA preempts these claims. The court finds this argument unpersuasive and concludes this is not a case for §301 preemption.
Section 301 “address[es] disputes arising out of labor contracts.” Allis-Chalmers v. Lueck, 471 U.S. 202, 209 (1985). Section 301 displaces state claims “substantially dependent” on interpretation of a collective bargaining agreement, not state claims which only tangentially touch upon collective bargaining agreement provisions. Lingle v. Norge Div. of Magic Chef, Inc. 486 U.S. 399, 409 (1988). “If state tort law purports to define the meaning of the contract relationship, that law is preempted.” Allis-Chalmers, 471 U.S. at 213.
In the present case, neither of Rae’s claims for intentional interference with contractual relations nor interference with advantageous relations relies upon interpreting the CBA or the PLA. In order for Rae to state a claim for intentional interference with contractual relations, Rae is required to demonstrate that (1) he had a contract with a third parly; (2) defendants knowingly induced the third party to break the contract; (3) the interference was motivated by improper means; and (4) plaintiff was harmed by defendants’ actions. See Draghetti v. Chmieleski, 416 Mass. 808, 816 (1994).
*185 Rae’s claim for intentional interference with contractual relations does not require the court to interpret either the CBA or the PLA. Rather Rae need only show that he had a contract with Morganti, his employer. Had Rae’s claim been against Morganti, an interpretation of the CBA and PLA would be required. Morganti, however, is not a party to this action and therefore Rae’s tortious interference with contractual relations claim is not contingent on any interpretation of the CBA or the PLA. The court concludes that Rae has shown he had a contractual relationship with Morganti (Morganti hired Rae as foreman) which satisfies his burden at the summary judgment stage.
Similarly, with respect to Rae’s intentional interference with advantageous relations claim, Rae must show (1) a business relationship or contemplated contract; (2) defendant’s knowledge of the relationship; (3) defendant’s interference with the relationship through improper motive or means; and (4) damage to the plaintiff. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). Contrary to defendants’ arguments, Rae has shown that a business relationship existed between himself and Morganti. Accordingly, the court need not interpret either the CBA or the PLA between Morganti and Local 223 to determine that Rae and Morganti were engaged in a business relationship.
In conclusion, resolution of Rae’s claims is not “substantially dependent on analysis of the terms of [the PLA or CBA].” Allis-Chalmers, 471 U.S. at 213. Therefore, Rae’s claims for tortious interference with contractual and advantageous relations are not preempted by §301. See, e.g. Fox v. Parker Hannifin Corp., 914 F.2d 795, 799-00 (6th Cir. 1990).[7]
Ill
Finally, defendants contend that summary judgment is appropriate because the facts are undisputed and Rae has not established as a matter of law elements essential to his claims. See Kourouvacilis, 410 Mass. at 716. However, a review of the depositions and other evidentiary materials contained in the summary judgment record demonstrates that there is a disputed issue of material fact, namely whether defendants intentionally or negligently caused Rae harm. See Flesner, 410 Mass. at 809. This disputed material fact is relevant to all of Rae’s claims. Accordingly, summary judgment is not warranted on any of the counts alleged in Rae’s complaint.
ORDER
For the foregoing reasons, the Defendants’ Motion For Summary Judgment is DENIED.

 29 U.S.C. §§ 157, 158.

 29 U.S.C. § 185(a).

 Sean Hughes is not a party to this action.

 It is unclear from the record whether his name is spelled Vinciguerra or Vinciquerra.

 Section 7 of the NLRA protects the rights of employees to organize and to engage in collective bargaining. “Employees shall have the rights to self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities.. .”29 U.S.C. § 157.

 Section 8 of the NLRA prohibits certain unfair labor practices, including, but not limited to: restricting other employees from exercising their rights under §157, causing an employer to discriminate against nonunion employees, refusal to bargain collectively, engaging in secondary boycott activity, charging excessive union dues, causing an employer to pay for work not performed, and recognitional picketing within one year of a valid election. 29 U.S.C. § 158.

 Defendants cite Magerer v. John Sexton & Co., 912 F.2d 525 (1st Cir. 1990) in support of their position that §301 preemption should apply. However, Magerer is inapposite. The plaintiff in that case had essentially relabeled a breach of contract claim as an intentional interference with contractual relations claim in order to avoid §301 preemption. Magerer, 912 F.2d at 529. This is not the case here. In addition, the First Circuit Court of Appeals also concluded that the CBA would have to be interpreted in order to determine whether the defendant-employer was entitled to discharge plaintiff. Id. at 530-31. Here, the court’s analysis is not dependent on an interpretation of contract rights contained within the CBA or the PLA. The issue of Morganti’s right to discharge Rae under the PLA is irrelevant to whether defendants tortiously interfered with Rae’s contractual rights between Rae and Morganti.