**C & W CONSTRUCTION COMPANY, a sole proprietorship, Cher Mungovan, and Walter Mungovan, Plaintiffs,**

v.

**BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 745, AFL–CIO; Walter H. Kupau; William O. Nishibayashi; Ralph Torres; and Steven Suyat, Defendants.**

Civ. No. 83–0710.

United States District Court,
D. Hawaii.

June 7, 1988.

Charles Hurd, Honolulu, Hawaii, for plaintiff.

Pyun, Okimoto & Thomason, Matthew Pyun, Jr., Honolulu, Hawaii, for Brotherhood of Carpenters and Joiners of America, Local 745, AFL–CIO, and Walter H. Kupau.

Winston Mirikitani, Honolulu, Hawaii, for defendants Ralph Torres and Steven Suyat.

Samuel King, Jr., Adrienne King, Honolulu, Hawaii, for defendant Steven Suyat.

Renee Yuen, Richard Perkins, Honolulu, Hawaii, for defendant William Nishibayashi.

## ORDER CONCERNING PARTIES' DISPOSITIVE MOTIONS

PENCE, Senior District Judge.

On May 16, 1988, the court heard the defendants' motion to dismiss and the plaintiffs' motion for summary judgment. Matt Pyun appeared for the defendants, and Charles Hurd appeared for the plaintiffs. The court has considered the materials on file and arguments of counsel. For reasons discussed below, the court dismisses all of the plaintiffs' claims except the federal antitrust and the state interference with economic advantage/inducement to breach contract claims; it dismisses the plaintiffs' civil RICO claim with leave to amend the complaint; and it denies the plaintiffs' motion for summary judgment.

### I. BACKGROUND.

This suit involves the defendant union's alleged attempt to force the plaintiff construction company to recognize or bargain with the defendant union as the representative of the plaintiff's employees.

#### A. Parties.

Plaintiff C & W Construction Co. ("C & W") was a sole proprietorship of Walter Mungovan with its principal place of business located at Kihei, Maui. C & W was a

general contractor in the residential building and construction industry. Mungovan's wife, Cher, was an employee of C & W.

Defendant Brotherhood of Carpenters and Joiners of America, Local 745 AFL–CIO ("union") is an unincorporated association and labor organization within the meaning of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(5). It has its principal office in Honolulu. It represents employees in an industry affecting commerce within the meaning of section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 187.

Defendants Walter Kupau, William Nishibayashi, Ralph Torres, and Steven Suyat are agents of the union.

### B. Facts.

The following "facts" represent only the plaintiffs' allegations. The court will examine the defendants' motion to dismiss first. Under the standards for a motion under Fed.R.Civ.P. 12(b)(6), the court presumes all factual allegations of the non-moving party to be true, and it draws all reasonable inferences from them in his favor. Moreover, the court has, by Order of December 5, 1985, ruled that the defendants cannot submit evidence on many or most of the issues implicated in their motion, as discussed below. 108 F.R.D. 389.

### Plaintiffs' Allegations.

In 1979, Cher and Walter Mungovan founded C & W. C & W specialized in building custom homes on Maui. Before the defendants began their alleged misconduct in 1980, C & W had a gross income exceeding $500,000.

In December 1980, defendant Nishibayashi informed Walter Mungovan that the union would target C & W for an organizational campaign to obtain a union contract. Nishibayashi threatened Mungovan with violence if C & W did not sign a union contract. He also threatened to picket C & W job sites if it did not sign the contract. Defendant Torres and other union agents made other and similar demands to C & W for the union contract. Mungovan refused, stating C & W was already paying union scale wages. He explained he would negotiate a union contract when C & W had developed to a larger scale.

On January 6, 1981, at the direction of union president Kupau, Nishibayashi, Suyat, Torres, and other union agents, union members began picketing three C & W job sites. C & W requested that for the first week of picketing its employees not work. C & W then asked its employees if they wanted to work. The employees agreed to work and crossed the picket lines.

On February 9, 1981, the National Labor Relations Board ("NLRB") held a representation election at C & W's request. C & W's employees voted unanimously to reject the union as their representative. The NLRB regional director issued complaints alleging that the union's pickets at C & W's job sites were illegal. The NLRB brought suit in this court to enjoin the pickets.

On February 27, 1981, Kupau told Mungovan that a contract must be executed to end the picketing at C & W's job sites. Mungovan refused. The union continued to picket C & W's job sites. Altogether the union picketed C & W job sites for more than three months. The picketing ended April 16, 1981.

C & W had entered into contracts with various materials suppliers; e.g., concrete block, cement, crushed rock, glass, and lumber. Union agents wrongfully influenced these suppliers not to deliver materials to C & W's job sites. Union agents also influenced, contacted, or coerced others obligated to perform contractual services for C & W not to cross the union's picket line. Those parties then failed to deliver materials or otherwise do business with C & W.

In the NLRB proceedings, Nishibayashi and Torres lied in affidavits submitted to this court. They were later convicted of perjury for such statements.

The union's misconduct caused C & W to suffer injuries including: delay in completing jobs, higher costs, termination of a job in progress, lost opportunities for other jobs, damage to business reputation, loss of employees, higher interest rates on financing, and lost profits. Both Cher and Wal-

ter Mungovan suffered emotional distress and damage to their reputations.

On July 15, 1983, the plaintiffs filed suit against the defendants. The complaint was amended on September 1, 1988. The complaint contained eleven claims for relief:

(1) Federal antitrust (15 U.S.C. § 1)

(2) Unfair labor practice (29 U.S.C. § 187(b))

(3) Civil RICO (18 U.S.C. § 1964)

(4) State antitrust: conspiracy in restraint of trade (Haw.Rev.Stat. § 480–4)

(5) State antitrust: unfair trade practice (Haw.Rev.Stat. § 480–2)

(6) State antitrust: refusal to deal (Haw.Rev.Stat. § 480–6)

(7) Interference with Economic Advantage and/or Inducement to Breach of Contract

(8) Negligent Infliction of Emotional Distress (Cher Mungovan)

(9) Negligent Infliction of Emotional Distress (Walter Mungovan)

(10) Intentional Infliction of Emotional Distress (Cher Mungovan)

(11) Intentional Infliction of Emotional Distress (Walter Mungovan)

## II. DISCUSSION.

The court will first examine the defendants' motion to dismiss all eleven of the plaintiffs' claims and begins with the defendants' statute of limitations arguments. It will then proceed to the defendants' arguments against the plaintiffs' remaining claims. Thereafter, it will address the plaintiffs' motion for partial summary judgment on four of its claims.

### A. Defendants' Motion to Dismiss.

#### 1. *Defendants' Motion in a Nutshell.*

The defendants move the court to dismiss the plaintiffs' complaint as follows: First, the antitrust claim is barred by the statutory or nonstatutory labor exemption to the Sherman Act § 1. Second, the state antitrust claims (based on Haw.Rev.Stat. chapter 480) are preempted by federal labor law. Third, the RICO claim is barred either by the statute of limitations, preempted by federal labor law, or void for failure to establish a violation of the RICO Act. Fourth, the state tort claims are barred by the statute of limitations or preempted by federal labor law. Fifth, that leaves only the plaintiffs' claim under the LMRA, 29 U.S.C. section 187(b), for a violation of 29 U.S.C. 158(b)(4), which defendants argue is barred by the statute of limitations.

#### 2. *Standards for Motion to Dismiss.*

While the defendants have brought their motion under both Fed.Rule 12(b)(6) and 56, the standards for Rule 12(b)(6) apply. By Pretrial Order No. 4, January 27, 1988, this court ordered the parties to file "dispositive motions not requiring further discovery and supporting pleadings." By its order of December 5, 1985, this court sanctioned the defendants for stonewalling during discovery. The Order affects all or most of the factual issues implicated in their motion to dismiss. In essence (but without limitation), the union is precluded from offering any evidence, direct or inferential, regarding plaintiffs' allegations of secondary boycott; conspiracy to restrain trade; unfair trade practice and refusal to deal; scheme to defraud or extort; inducement to breach of contract and interference with prospective economic advantage; and infliction of emotional distress. Also, the defendants Nishibayashi, Torres, and Suyat will not be permitted to testify except as to matters outside those included in the Order.

At this time, the court is not considering matters external to the pleading, and will consider the motions under Rule 12(b)(6).

This court is familiar with the standards for a motion to dismiss under that Rule.[1]

---

1. *See Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980); *California ex rel. Younger v. Mead,* 618 F.2d 618, 620 (9th Cir.1980); *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987),

3. *Defendants' Statute of Limitations Arguments.*

 a. Plaintiffs' RICO Action.

■ The plaintiffs' third claim for relief is brought under 18 U.S.C. § 1964 for violations of 18 U.S.C. § 1962(c), (d) (i.e., RICO). The plaintiffs base the predicate acts of 18 U.S.C. § 1962, i.e., certain racketeering activities in violations of 18 U.S.C. §§ 1341, 1342 and 18 U.S.C. § 1503, on alleged events that occurred more than two years before they filed suit in this court. Picketing by Local 745 ended on April 16, 1981; this suit was filed on July 15, 1983.

The Supreme Court has held that the four year statute of limitations applicable to Clayton Act civil enforcement actions, 15 U.S.C. § 15(b), applies to RICO civil enforcement actions. *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). The plaintiffs brought their RICO claim within four years of the defendants' last alleged predicate act. Under *Agency Holding*, their claim was timely brought. Accordingly, the court disregards the defendants' statute of limitations argument on the plaintiffs' RICO claim.

The court will consider the remaining issues of the defendants' motion to dismiss the RICO claim after it addresses the defendants' statute of limitations arguments concerning other claims.

 b. Plaintiffs' LMRA Claim.

■ Plaintiffs' second claim for relief is brought under 29 U.S.C. § 187(b), for the defendants' alleged "unfair labor practices" as specified in 29 U.S.C. § 158(b)(4). Again, the alleged activities supporting this claim occurred more than two years before the plaintiffs filed suit in this court.

The Labor Management Relations Act (LMRA) does not provide a limitations period. The court must therefore look to Hawaii law for the most analogous state statute. *Agency Holding*, 107 S.Ct. at 2762 (citations omitted). The defendants argue the most analogous state statute is Hawaii Rev.Stat. § 657–11, citing *Int'l Ass'n of Machinists v. Aloha Airlines*, 790 F.2d 727

(9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 400, 93 L.Ed.2d 354 (1986). In *Aloha*, the Ninth Circuit ruled that for actions filed after *Aloha* (February 6, 1986), the Ninth Circuit would apply the rule of *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed. 2d 476 (1983), to Railway Labor Act (RLA) actions. In *DelCostello*, the Supreme Court applied the six month limitations rule of NLRA § 10(b), 29 U.S.C. § 160(b), to fill a statute of limitations "gap" in the LMRA.

The *Aloha* panel declined to apply the *DelCostello* holding retroactively. It determined that for actions filed before *Aloha*, the most closely analogous state statute covering the RLA would apply. For Hawaii, the most closely analogous statute was § 657–11, which at that time "established a one year limitation period for a 'liability ... impose(d)' by federal statute." *Duncan v. Southwest Airlines*, 838 F.2d 1504, 1508 (9th Cir.1987).

The plaintiffs argue that *Aloha* is distinguishable from this action because it involved the RLA and not the LMRA. The plaintiffs argue that the RLA action in *Aloha* was more akin to an action under the NLRA for breach of contract, 29 U.S.C. § 185. This argument fails. Section 657–11 by its terms covers "liability ... impose[d]" by federal statute, which would apply equally to an RLA action or an LMRA action. *See also Duncan*, 838 F.2d at 1507 (dicta).

Moreover, in *DelCostello*, the Supreme Court intended the six month limitation period of NLRA § 10(b), 29 U.S.C. § 160(b), to apply to unfair labor practices. 462 U.S. at 170. The Supreme Court cited specifically LMRA § 8(b)(1) and (2), which is 29 U.S.C. § 158(b)(1) & (2). This case involves unfair labor practices claim brought under LMRA § 8(b)(4), which is 29 U.S.C. § 158(b)(4). The *DelCostello* holding would apply equally to LMRA § 8(b)(4) as to § 8(b)(1) & (2), both in terms of its six month rule and the reasoning behind the rule.

and *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Section 657–11 is the most closely analogous Hawaii statute of limitations for the LMRA claim, which, under its earlier one-year period or its amended two-year period, bars this claim. This conclusion comports with the procedure outlined in *Agency Holding,* and the *Aloha*'s ruling regarding the retroactive application of *DelCostello.* The LMRA claim is DISMISSED as time barred under § 657–11.

c. Plaintiffs' State Tort Claims.

■ Haw.Rev.Stat. § 657–7 provides in pertinent part: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action occurred, and not after...." The emotional distress claims fall within the coverage of this statute. The plaintiffs filed their complaint more than two years after the final alleged tortious acts of the defendants. These claims are DISMISSED as time barred under Haw.Rev.Stat. § 657–7.

d. The Plaintiffs' Equitable Tolling Defense.

■ The plaintiffs argue the court should apply the doctrine of equitable tolling to the statutes of limitations. To understand their argument requires some additional facts. The alleged misconduct ended April 16, 1981. Kupau and Torres filed a state suit against Walter Mungovan on May 6, 1981, to which Mungovan filed a counterclaim. That court granted Mungovan's motion for summary judgment on Kupau's and Torres' complaint. On January 6, 1983, the Mungovans filed a separate state court action against the union, Torres, and Nishibayashi. This action was later consolidated with the earlier action originated by Kupau and Torres.

The plaintiffs move the court to have their federal action relate back to the filing of Kupau's and Torres' original complaint of May, 1981, based on the doctrine of equitable tolling.

Hawaii has never adopted the doctrine of equitable tolling. Contrary to plaintiffs' argument, this court never adopted the equitable tolling doctrine in *Charley's Tour & Transp., Inc. v. InterIsland Resorts,*

*Ltd.* 618 F.Supp. 84 (D.Haw.1985) (King, J.).

The plaintiffs also cite *Oahu Gas Service, Inc. v. Pacific Resources,* 473 F.Supp. 1296 (D.Haw.1979) (King, J.). *Oahu Gas* is likewise unpersuasive. In *Oahu Gas,* the complaint and counterclaims were both filed in this (federal) court. In the instant case, the defendants Kupau and Torres first filed in state court, where the plaintiffs counterclaimed and then filed a separate state action. Only after these state actions had begun and after the limitations period had run on their unfair labor practices claim and pendent emotional distress claims did the plaintiffs file suit in federal court.

The plaintiffs, nevertheless, argue that their federal action relates back not just to their filing of the state complaint in January 1983, but to May 1981 when Kupau and Torres filed their original action against Walter Mungovan (dba C & W). Hawaii has not recognized the equitable tolling doctrine, but it also has construed statutes of limitations very strictly. *See Yoshizaki v. Hilo Hosp.,* 50 Haw. 150, 154, 433 P.2d 220 (1967) ("The basic policy underlying statutes of limitation is to require prompt assertion of claims."). The Hawaii Supreme Court has characterized statutes of limitations as inflexible. *See Adair v. Hustace,* 64 Haw. 314, 321, 640 P.2d 294 (1982).

*Addison v. California,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978), is inapposite. The *Addison* court stated that the purpose of the doctrine was "to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." 578 P.2d at 942. *Addison* outlined the very specific steps a plaintiff had to take under the California Tort Claims Act. *Id.* This matter, conversely, does not involve any technical rules or detailed regulatory scheme. *(Stallcop v. Kaiser Foundation Hospitals,* 820 F.2d 1044, 1050 (9th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 540, 98 L.Ed.2d 502 (1987), *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir. 1981)).

■ Mere commencement of an action in one state or federal jurisdiction generally does not toll the statute of limitations against an action for the same cause and between the same parties in another state or federal jurisdiction. *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 240 (9th Cir.1987) ("Prior judicial actions, however, 'do not toll the statute of limitations, no matter how close their relationship to the one at bar.' ") (*quoting Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319 (1st Cir.1978)) (citing *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1965)), *cited with approval in, Mir v. Little Company of Mary Hosp.*, 844 F.2d 646, 649–650 (9th Cir.1988); *see generally* 54 C.J.S. *Limitations of Actions* § 129, at 172 (1987).

Accordingly, the applicable statutes of limitations BAR the plaintiffs' labor claim and pendent state emotional distress claims.

This leaves the following claims:

(1) Federal antitrust (15 U.S.C. section 1)

(2) Civil RICO (18 U.S.C. section 1964)

(3) State antitrust: conspiracy in restraint of trade (Haw.Rev.Stat. § 480–4)

(4) State antitrust: unfair trade practice (Haw.Rev.Stat. § 480–2)

(5) State antitrust: refusal to deal (Haw. Rev.Stat. § 480–6)

(6) Interference with Economic Advantage and/or Inducement to Breach of Contract

The defendants' arguments to dismiss these remaining six claims are discussed in the order set out directly above.

*4. Plaintiffs' Antitrust Claim (Sherman § 1).*

■ The plaintiffs allege that the union through its agents made C & W the object of a secondary boycott. A secondary boycott is a combination with the purpose and effect to coerce customers, patrons, or suppliers, through fear of loss or bodily harm, to withhold or withdraw their business relations from an employer who is under attack. *Altemose Constr. Co. v. Atlantic,*

*Cape May, Etc.*, 493 F.Supp. 1181, 1187 n. 6 (D.N.J.1980) (citing *Black's Law Dictionary* 1212 (5th ed. 1979)). Specifically, the plaintiffs allege the union induced C & W's materials suppliers and others, obligated under contract to C & W to perform services, not to deal with C & W (henceforth collectively as "suppliers"). They allege this concerted refusal to do business with C & W violated § 1 of the Sherman Act, 15 U.S.C. § 1. *See* First Amended Complaint ¶¶ 32, 33 (set out below).

The defendants counter that the plaintiffs cannot recover under Sherman § 1, because of the statutory and nonstatutory labor exemptions to antitrust law.

a. Have plaintiffs pled a viable antitrust violation?

■ Before the court considers the defendants' labor exemption arguments, i.e., which would make them immune from antitrust attack, it must determine if the plaintiffs have pled a viable federal antitrust violation. Section 1 of the Sherman Act provides in pertinent part: "Every contract, combination, in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared illegal." 15 U.S.C. § 1.

The plaintiffs allege in their complaint:

The defendants in this action together with others, have entered into an anticompetitive scheme, combination, conspiracy and contract in restraint of trade to prevent C & W from competing in the construction industry and to restrain competition in the construction industry in Maui, Hawaii, and *to induce suppliers of goods to C & W and others not to deal with C & W such as to constitute a concerted refusal to do business with C & W in violation of § 1 of the Sherman Act* (15 U.S.C. § 1).

First Amended Complaint, at 13 (emphasis added).

More specifically, the plaintiffs allege agents of the union "wrongfully influenced the materials suppliers for C & W to not deliver various supplies to C & W's jobsites [sic]." *Id.* at 10, ¶ 23. The suppliers then

allegedly failed or refused to deliver the various materials, including concrete, crushed rock, lumber, and glass, or otherwise to deal with C & W. *Id.* ¶ 24. The union also allegedly influenced, contacted, or coerced others who were obligated to perform contractual services for C & W not to cross the union's picket lines against C & W. *Id.* ¶ 25.

The case of *Altemose Constr. Co. v. Atlantic, Cape May, Etc.,* 493 F.Supp. 1181 (D.N.J.1980) is on point. In *Altemose,* that court dismissed the defendants unions' motion to dismiss a complaint that alleged the defendants had threatened or coerced certain *suppliers* of the plaintiff (a non-union general contractor who was attempting to build a raquetball club) to cease doing business with the plaintiff and entered into a similar agreement with other suppliers. The court held that these allegations sufficed to overcome the assertion that the defendants unions' activities were within the labor exemptions to the antitrust laws.

The *Altemose* court stated specifically regarding the alleged unlawful combination and conspiracy between the unions and the plaintiff's supplier:

> The allegations in the complaint reveal that Altemose's construction work has been impeded by activities engaged in on behalf of the union defendants. Significant impediments include vandalism at the job site in question, violence and threats of violence directed to Altemose employees and those who would provide services to Altemose, and threats to suppliers of Altemose if the suppliers dealt with the plaintiff [Altemose]. In consequence of the alleged unlawful acts, the plaintiff has sustained substantial difficulty and additional costs in obtaining concrete required to complete the raquetball club as well as other damages already discussed. These allegations facially disclose an unreasonable restraint of trade under Section 1 of the Sherman Act.

493 F.Supp. at 1190.

Before the court follows *Altemose* and conclude the plaintiffs have pled a viable

antitrust violation by the union under Sherman § 1, however, it must determine whether the allegations support the required concerted action between the union and C & W's suppliers to bring the unreasonable restraint of trade within Sherman § 1; i.e., that the misconduct was, in fact, conspiratorial, and not unilateral by the union.[2]

■ To plead a viable violation of Sherman § 1, the plaintiff must allege two factors: (1) plurality of actors and (2) concerted action. *See* 2 Von Kalinowski, *Antitrust Law and Trade Regulation* § 6.01[1] (1981). Here, C & W has alleged a plurality of actors: the union and its agents on the one hand, and C & W's suppliers on the other, and has met the plurality of actors requirement. As to the concerted action requirement, to establish concerted action C & W must plead facts (and, of course, subsequently prove facts) that would allow the reasonable inference that C & W's suppliers had a conscious commitment to a common scheme to effect an unreasonable restraint of trade, as willing or *unwilling* participants.

The plaintiffs allege that the union contacted, influenced, or coerced the C & W suppliers to refuse to deal with C & W; they also allege the suppliers thereafter refused to deal with C & W.

It is no excuse that the suppliers were threatened and thus were apparently unwilling participants. In a different type of Sherman § 1 case, the Ninth Circuit held that acquiescence by an unwilling party does not prevent it from being a co-conspirator for purposes of Sherman § 1. *See Filco v. Amana Refrigeration, Inc.,* 709 F.2d 1257, 1266 (9th Cir.), *cert. dismissed,* 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983). *See also Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968): "acquiescence by a retailer makes it the second party to the conspiracy." 709 F.2d at 1266 (other citations omitted), and *also United States v. Parke Davis & Co.,*

---

**2.** The *Altemose* court did not address this issue.

362 U.S. 29, 46–47, 80 S.Ct. 503, 513, 4 L.Ed.2d 505 (1960).

While *Filco, Albrecht,* and *Parke Davis* are obviously factually distinct from the instant case, they nonetheless hold that acquiescence by a party to restrain trade may make it privy to a combination or conspiracy in violation of the Sherman Act.

Here, the plaintiffs have alleged facts from which a trier of fact could reasonably infer that the union contacted, influenced, or coerced C & W's suppliers to refuse to deal with C & W, and that the suppliers then did refuse to deal with C & W. The plaintiffs allege they were injured by this refusal to deal, which supports the reasonable inference of an unreasonable restraint on trade.

■ The analysis, however, requires one additional step. In *Harlem River Constr. Co-op v. Associated Grocers of Harlem, Inc.,* 408 F.Supp. 1251 (S.D.N.Y.1976), a cooperative grocery store sued various suppliers and a food store association, among others. One of the claims was that the defendant food store association had coerced suppliers not to deal with the plaintiff to force it to accept a contract from the defendant association. One of the salient issues was whether the plaintiff had alleged facts to permit a jury to find that suppliers were involved in conspiracy to violate antitrust laws. The court stated that even if an inference of coercion was reasonable, this alone would not support a finding of conspiracy. The plaintiff also would have to allege facts allowing a jury to infer reasonably that the coerced and complying party who refused to deal knew that the purpose of the coercion was to pursue an end that violated antitrust laws. 408 F.Supp. at 1280.

In this case, then, the court must also determine whether the plaintiffs' allegations support the reasonable inference that the C & W suppliers knew the purpose of the union's coercion was to restrain trade unreasonably, i.e., to "bust" C & W. The plaintiffs allege that the union threatened the C & W suppliers. While they present no direct evidence that the allegedly coerced suppliers knew the purpose of the union's threats was to break C & W, circumstantial evidence supports the reasonable inference that the suppliers must have known that if C & W could not get supplies and necessary services, it would be forced out of business or to capitulate to the union's demands.

This conclusion is consistent with the Ninth Circuit's approach for alleging a conspiracy in antitrust cases. *See Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 889 (determination of conspiracy in Sherman § 1 claim is inappropriate for summary judgment where there is a material issue of fact regarding the unlawful intent or anticompetitive effect based on a refusal to deal) (citations omitted). *See also Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902.

The court disregards the defendants' attempt to show it had a plausible and justifiable reason for its conduct consistent with proper business practice. Such evidence falls within the preclusive ambit of the court's December 5, 1985 Order on discovery sanctions.

The plaintiffs have alleged a viable violation of Sherman § 1. The court now addresses the defendants' labor exemption arguments.

### b. The Labor Exemptions.

Organized labor enjoys two types of exemptions from federal antitrust laws: statutory and nonstatutory. *Granddad Bread, Inc. v. Continental Baking Co.,* 612 F.2d 1105, 1109 (9th Cir.1979), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981).

### i. *The Statutory Exemption.*

The sources of the statutory exemption include the Clayton Act, 15 U.S.C. § 17 (1982), 29 U.S.C. § 52, and the Norris LaGuardia Act, 29 U.S.C. §§ 104, 105, 113. These statutes declare that labor unions are not in themselves combinations or conspiracies in trade, and exempt many of their activities from the operation of antitrust laws.

Interpreting these interrelated statutes, The Court has concluded that unilateral union activity having a labor objective is

exempt "[s]o long as a union acts in its own self-interest and does not combine with non-labor groups." *United States v. Hutcheson,* 312 U.S. 219, 232, 61 S.Ct. 463, 466, 85 L.Ed. 788 (1941). That is, the union activities must be unilateral, not conspiratorial.

The Court has interpreted the exemption statutes as inapplicable to concerted action or agreements between unions and non-labor parties affecting matters outside of the parties collective bargaining relationship. *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Court, in *Connell Constr. Co. v. Plumbers & Steamfitters Local 100,* 421 U.S. 616, 621–22, 95 S.Ct. 1830, 1834–35, 44 L.Ed.2d 418 (1975) held, "[The statutes] do not exempt concerted action or agreements between unions and nonlabor parties." *Id.* at 622, 95 S.Ct. at 1835.

The statutory exemption, then, does not apply here. At least for purposes of determining this motion, it inferentially appears that there was a "concerted action or agreement" between the union and nonlabor parties, i.e., C & W's suppliers.

■ Moreover, section 6 of the Clayton Act, 15 U.S.C. § 17, merely states that the labor organizations may *lawfully* carry out their legitimate objectives. *Altemose,* 493 F.Supp. at 1191. Section 20 of the Clayton Act, 29 U.S.C. § 52, exempts *peaceful* labor activity including communications aimed at persuading individuals to cease working for or patronizing particular employers. *Altemose,* 493 F.Supp. at 1191. In this case, the plaintiffs allege threats of violence made to prevent C & W from obtaining necessary building materials or services. Although it may have been in the defendants' interest to ensure that the terms under which its employees worked met area standards for its workers, this union did not pursue this objective via peaceful authorized methods. The plaintiffs also allege facts supporting the reasonable inference that the union's primary purpose in picketing C & W was to coerce the execution of a collective bargaining agreement, not to protest substandard wages. *Cf. Altemose,* 493 F.Supp. at 1191

(applying these statutes on very similar facts, held that there was no exemption given the union defendants' violent tactics). Accordingly, the statutory labor exemption does not apply.

ii. *Nonstatutory Exemption.*

■ The Ninth Circuit has recently described the scope of the nonstatutory exemption:

The Supreme Court has recognized a limited nonstatutory exemption which "has its source in the strong labor policy favoring the association of employees to eliminate competition over wages and working conditions." [Connell, 421 U.S. at 621–22, [95 S.Ct. at 1834–35]] Thus some union-employer agreements are exempt from antitrust sanctions as part of the "proper accommodation between the congressional policy favoring free competition in business markets." *Id.* The nonstatutory exemption, then, may be invoked in cases involving valid collective bargaining agreements between unions and employers on wages or working conditions.

*Sun–Land Nurseries, Inc. v. Southern California Dist. Council of Laborers, Etc.,* 793 F.2d 1110, 1115 (9th Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987).

The plaintiffs allege the union coerced or influenced the suppliers to refuse to deal with C & W, which action was outside any collective bargaining agreement. *Cf. Altemose,* 493 F.Supp. at 1191. (There was no valid collective bargaining agreement; C & W's employees rejected representation by the union unanimously in an NLRB authorized election.)

The plaintiffs have alleged facts sufficient to overcome the defendants' assertions that they are immune from antitrust liability under the nonstatutory exemption.

c. Liability of the individual defendants as the union's Agents.

■ The individual defendants Kupau, Nishibayashi, Torres, and Suyat claim that they cannot be held liable under the antitrust laws because they were acting entire-

ly within the scope of their authority as agents. This argument ignores basic precepts of agency law.

The defendants rely principally on the case of *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313 (9th Cir.1986). In *Pink Supply,* that panel stated that Sherman § 1 prohibits only restraints of trade effected by contract, combination, or conspiracy between separate entities. *Id.* at 1315–16 (quoting *Fisher v. City of Berkelely,* [475 U.S. 260, 265–67,] 106 S.Ct. 1045, 1049, 89 L.Ed.2d 206 (1986); *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)). Defendants argue they are not separate entities, because of their agency status with the union.

The defendants cite no authority to support their theory that agency status insulates them from antitrust liability. This would contravene well established law that an agent is individually liable for torts committed by him pursuant to his agency. *Cf.* Restatement (Second) of Agency § 343 (1957). An antitrust action is, or is in the nature of, a tort action. This agency principle applies in the antitrust context. *E.g., Murphy Tugboat Co. v. Shipowners & Merchants Tugboat Co., Ltd.,* 467 F.Supp. 841, 851–52 (N.D.Cal.1979), *affirmed,* 658 F.2d 1256 (9th Cir.), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982); *Deaktor v. Fox Grocery Co.,* 332 F.Supp. 536, 542 (W.D.Pa.1971), *affirmed,* 475 F.2d 1112 (3rd Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973).

In *Murphy Tugboat,* that court stated that an individual through whom a corporation acts and who shapes corporate intentions can be held liable for antitrust violations. 467 F.Supp. at 852. The corporate executive must participate in the tort, and his personal liability would be limited to participation in inherently wrongful conduct. *Id.* at 852–53.

This case is analogous to *Murphy Tugboat.* In this case, the plaintiffs allege the union acted through the individual defendants, who participated in the alleged restraint of trade by coercing suppliers not to deal with C & W. The individual defendants would be jointly and severally liable with the union for any antitrust liability C & W proves.

### d. Conclusion.

The plaintiffs have alleged a viable antitrust claim. The defendants are not immune from the plaintiffs' federal antitrust claim under the labor exemptions. The individual defendants may be liable with the union for antitrust liability.

### 5. *Plaintiffs' RICO Claim.*

This court has heretofore ruled that the plaintiffs' civil RICO claim was not barred by the applicable statute of limitations. The defendants present other arguments why the court should dismiss the plaintiffs' RICO claim.

### a. Defendants' argument that RICO claims fail to state a claim upon which relief can be granted.

Plaintiffs allege that conduct of the defendants violated 18 U.S.C. §§ 1962(c) and (d) of RICO. They seek treble damages under 18 U.S.C. § 1964(c). A violation of § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiffs must allege these elements to state a claim. *Sedima, S.P.R.L. v. Imrex Company,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346; *United Energy Owners v. United Energy Mgmt.,* 837 F.2d 356, 362 (1988). More specifically, a plaintiff suing under civil RICO must allege:

1. The defendant ("person" in terms of RICO)

2. through the commission of two or more timely acts (i.e., within 10 years)

3. constituting a "pattern"

4. of "racketeering activity"

5. directly or indirectly invests in, maintains and interest in, or participates in

6. an "enterprise"

7. the activities of which affect interstate (or foreign) commerce,

8. "by reason of" which the plaintiff was injured in his business or property.

*Cf. Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17, 20–23 (2d Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

For discussion, these eight elements are here organized as: (i) persons liable, (ii) predicate acts, (iii) pattern of racketeering activity, (iv) affected enterprise, (v) prohibited activities, (vi) resultant injury.

### (i) Persons liable.

Section 1961(3) defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." There is no problem with the person requirement. There would be a problem if the plaintiffs name the union as both "person," i.e. defendant, and "enterprise" in a RICO § 1962(c) claim. *United Energy Owners,* 837 F.2d at 364. The plaintiffs indicated at the hearing, however, that the intended affected "enterprise" is C & W and its material suppliers, not the union. This issue discussed in the affected "enterprise" section below.

### (ii) Predicate acts ("racketeering activity").

The defendants argue the plaintiffs have not alleged sufficient predicate acts to support their RICO claim. The plaintiffs base their predicate acts on alleged violations of the following federal statutes:

(a) obstruction of justice, 18 U.S.C. § 1503.

(b) mail and wire fraud, 18 U.S.C. §§ 1341, 1343.

(c) Hobbs Act (interference with commerce by threats or violence, 18 U.S.C. § 1951).

The court must determine whether these predicate acts as pled support the RICO claim.

### (ii)(a) Obstruction of justice, 18 U.S.C. § 1503.

The plaintiffs allege that certain individual defendants lied in affidavits submitted to the district court in an NLRB lawsuit or elsewhere and were thereafter convicted for perjury. First Amended Complaint ¶¶ 46, 47. The defendants argue that perjury alone does not violate 18 U.S.C. § 1503, citing *United States v. Essex,* 407 F.2d 214, 218 (6th Cir.1969) (one must allege that defendant has impeded the court in the conduct of its business or an attempt to do so beyond the mere rendering of false testimony).

In *Essex,* however, the court stated that the defendant was charged with perjury and nothing more; although the defendant may have perjured herself, she did not try to interfere with the officers, jurors, or witnesses within the meaning of 18 U.S.C. § 1503. *Id.* at 218. *Essex* is not on all fours with this case. Here, the plaintiffs have alleged more than perjury to support their RICO claim. They argue that the perjury was part of a pattern of racketeering, which also included extortion and wire and mail fraud. *See* Amended Complaint, at 18 ¶ 49 (set out below).

Perjury, per se, has been held by some courts not to be a RICO predicate act. *See Rand v. Anaconda–Ericsson, Inc.,* 623 F.Supp. 176, 182 (E.D.N.Y.1985), *affirmed,* 794 F.2d 843, 849 (2d Cir.1986), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed. 2d 582 (1986); *Sellers v. General Motors Corp.,* 590 F.Supp. 502, 507 (E.D.Pa.1984).

Other authority indicates the exception to this rule. *von Bulow by Auersperg v. von Bulow,* 657 F.Supp. 1134, 1145 (S.D.N.Y.1987) (While the court in *Sellers v. General Motors,* cited directly above, dismissed a RICO claim where perjury alone was alleged as a predicate act, the court stated, in dicta, that the result might have been different had the perjury been the element of a larger conspiracy to defraud.); *accord Town of Kearny v. Hudson Meadows Urban Renewal Corp.,* 829 F.2d 1263, 1269 (3rd Cir.1987) (suggests in dicta that perjury could be found to establish continued existence of a RICO enterprise and to be part of the pattern of racketeering activity).

The Court has stated that "RICO is to be read broadly." *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987) (quoting *Sedima,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). It has also cautioned against a narrow interpretation of predicate acts defined in 18 U.S.C. § 1961(1), which includes 18 U.S.C.

§ 1503 (obstruction of justice). *Cf. United States v. Turkette*, 452 U.S. 576, 586–87, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981).

 The court will not conclude absolutely that perjury can never be a predicate act for RICO purposes. The more reasoned rule would allow perjury to be a predicate act under 18 U.S.C. § 1961(1), through 18 U.S.C. § 1503, where the plaintiffs allege that the perjury was part of the pattern of a racketeering activity.

The plaintiffs allege specifically:

26. In the NLRB proceedings, Nishibayashi and Torres and others lied on affidavits submitted to the United States Court for the District of Hawaii, in order to further their illegal and wrongful purposes and to the damage of C & W.

27. Subsequent to the NLRB proceeding alleged above, Nishibayashi and Torres were each indicted and convicted of four counts of perjury and false statement [sic] in the United States District Court of the State of Hawaii. Kupau and Suyat were indicted on seven counts of perjury relating to sworn statements on testimony in four different prodeedings.

. . . .

46. By the acts alleged in paragraphs 26 and 27 hereinabove, Defendants have corruptly and/or by threats or force endeavored to influence, obstruct and/or impede the due administration of justice, in violation of 18 U.S.C. § 1503.

. . . .

49. By engaging in the acts alleged hereinabove, Defendants, and each of them, established a pattern of racketeering activity, as defined by 18 U.S.C. 1961(1)(B), consisting of violations of 18 U.S.C. §§ 1341, 1343, 1503, and 1951(b)(2).

First Amended Complaint, at 11, 17, 18.

These allegations suffice to overcome the defendants' arguments that perjury cannot be a predicate act supporting the plaintiffs'

RICO claim. The plaintiffs allege the perjury was part of a pattern of racketeering.[3]

(ii)(b) Mail and wire fraud, 18 U.S.C. §§ 1341, 1343.

 Mail and wire fraud are the two predicate acts most frequently used to establish "racketeering activity" under RICO. *Agency Holding*, 107 S.Ct. at 2763. The statutes proscribe use of mails, § 1341, and use of interstate electronic media, § 1343, to further schemes to defraud. Both statutes are broad and simple, requiring three elements: (1) devising a scheme to defraud, (2) using the mails or wires to further the fraud, (3) with the specific intent to deceive or defraud. *Sun Savings*, 825 F.2d at 195; *accord White v. Beer*, 679 F.Supp. 207, 211 (E.D.N.Y.1988) (citations omitted).

The plaintiffs allege:

45. In furtherance of Defendants' scheme to defraud Plaintiffs, Defendants have used the United States mail and have placed interstate telephone calls in violation of 18 U.S.C. §§ 1341 and 1343, as follows:

(a) The illegal picketing and other acts were conducted by members and Business Agents of the island of Maui, pursuant to instructions and/or with concurrence by leaders of the Hawaii carpenters union located in Honolulu;

(b) Honolulu-based leaders of the Hawaii carpenters Union used interstate telephones to attempt to negotiate with Walter Mungovan to end their illegal campaign, in exchange for C & W signing upon a union contract;

(c) Leaders of the Hawaii Carpenters Union used the U.S. mails to send letters requesting pay records for C & W employees and threatening to picket C & W unless Plaintiffs prove that they were paying prevailing wages and that working conditions were good.

First Amended Complaint, at 16–17.

These allegations do not satisfy the *Sun Savings* requirement (3), "specific intent to

---

**3.** The court has ordered dispositive motions, realizing that discovery is not complete. At a later stage of the proceedings, the court may disregard the perjury as predicate acts if the plaintiffs do not show that the perjury was part of the pattern of racketeering. Moreover, if the plaintiffs fail in their proof at trial, the court can direct a verdict before submitting the case to the jury.

defraud." There is no direct or indirect reference to a misrepresentation. The allegations essentially state that the defendants used the mails and telephone wires to threaten C & W to force it to sign a contract with the union. While courts have read these statutes broadly, allowing such threats to form the basis of a scheme to defraud would give the statute too broad a reading. If anything, the defendants apparently were candid about their concerns and demands in threatening C & W.

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." A RICO suit alleging fraud as a pattern of racketeering activity must therefore comply with Rule 9(b). Failure to do so may result in dismissal. A number of courts have so held. *E.g., White v. Beer*, 679 F.Supp. at 211–12 (citations omitted); *Caliber Partners Ltd. v. Affeld*, 583 F.Supp. 1308, 1313 (N.D.Ill.1984).

The plaintiffs have not alleged facts supporting violations of 18 U.S.C. §§ 1341, 1343. They have not alleged the specific intent to defraud inherent in the mail and wire fraud statutes. *Sun Savings*. They have not pled fraud properly under Fed.R. Civ.P. 9(b). The alleged violations of these statutes as pled do not constitute predicate acts that support the plaintiffs' RICO claim.

#### (ii)(c) Hobbs Act.

The defendants argue that the Hobbs Act cannot form the basis of a RICO count against the defendants in the context of a collective bargaining dispute, citing *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973). In *Enmons*, the defendants were striking union members charged with using violence to secure a new collective bargaining agreement with the Gulf States Utilities Company ("company") in violation of the Hobbs Act, 18 U.S.C. § 1951. The acts included firing high-powered rifles at the company's transformers, blowing up a transformer substation, and draining oil from a company transformer. *Id.* at 398, 93 S.Ct. at 1009. The issue was whether acts of violence committed during a lawful strike for the purpose of inducing an employer's agreement to legitimate collective bargaining demands constiuted extortion, which the Hobbs Act defines as "the obtaining of property of another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. § 1951(b)(2).

In interpreting the Hobbs Act, the Court focused on the word "wrongful," and reasoned that because it would be redundant to speak of "wrongful violence" or "wrongful force," Congress must have intended "wrongful" to limit the Act's coverage to "those instances where the obtaining of the property would itself be 'wrongful' because the extortionist has no lawful claim to the property." 410 U.S. at 400, 93 S.Ct. at 1009–1010. The Court therefore held that violence to achieve legitimate union objectives was not within the Hobbs Act's prohibition because there is no "wrongful" taking of the employer's property when union members receive wages and benefits in exchange for genuine services bargained for by the employer. *United States v. Thordarson*, 646 F.2d 1323, 1326 (9th Cir.1981), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 601, 70 L.Ed.2d 591 (1981).

The *Enmons* Court was concerned that if the Hobbs Act could support a RICO suit, it would "put the Federal Government in the business of policing the orderly conduct of strikes." 410 U.S. at 411, 93 S.Ct. at 1015. The Ninth Circuit has explained: "In *Enmons*, the Court focused on the special characteristics of the crime of extortion which embraces *any* act or threat of violence, however, [sic] minor, used to obtain the property of another. The underlying concern was that to apply a federal extortion statute in the context of the collective bargaining process would change minor acts of labor violence punishable by state law into felonies, thus placing the federal government in the business of policing the routine conduct of strike activity." *Thordarson*, 646 F.2d at 1329. The Ninth Circuit has read *Enmons* as holding only that the use of violence to secure legitimate collective bargaining objectives is beyond

the reach of the Hobbs Acts. *Thordarson,* 646 F.2d at 1327.

Here, assuming the plaintiffs' allegations to be true, for this motion, the union's threatened violence against C & W and its employees was not to secure legitimate collective bargaining objectives. Unlike the union in *Enmons,* the union in this case did not have a contract with C & W. Moreover, the union here was not on strike against C & W. The boycott was secondary, not primary. Thus, under Rule 12(b)(6) standards, the union's activities did not entail "legitimate collective bargaining objectives." Plaintiffs' allegations support the reasonable inference that the defendants engaged in an illegal secondary boycott, 29 U.S.C. §§ 158(b)(4), 187(b). *Enmons* is clearly distinguishable from the case at bar. Plaintiffs' alleged violations of the Hobbs Act constitute predicate acts supporting the plaintiffs' RICO claim.

*Thordarson* supports this conclusion. In *Thordarson,* employees of a moving and storage company elected Teamster Local 186 as their bargaining agent. The company refused to recognize Local 186. Local 186 and another Teamsters union, Local 389, then called a violent strike against the company. During the strike, union members destroyed the company's trucks.

A ten count indictment, including RICO counts, was filed in district court against certain officers or employees of Locals 186 and 389. The indictment charged that the defendants had conspired to destroy the company's trucks to coerce the company to recognize Local 186. *Id.* at 1325. The district court dismissed all ten counts of the indictment. The RICO counts were dismissed on authority of *Emmons,* which the district court read as precluding federal prosecution for violent activity that occurs during a legitimate labor dispute absent specific authorization from Congress. *Id.* at 1326 (citing *United States v. Thordarson,* 487 F.Supp. 991, 995 (C.D.Cal.1980)).

The Ninth Circuit reversed the district court on its broad reading of *Enmons.* The Ninth Circuit held that it read *Enmons* as holding only that the use of violence to secure legitimate collective bargaining objectives is beyond the reach of the Hobbs Act, 18 U.S.C. § 1951. As stated above, the Hobbs Act prohibits interference with commerce by extortion, defined as "the obtaining of property of another, with his consent, induced by wrongful use of actual or threatened force, violence or fear." 18 U.S.C. § 1951(b)(2). The Ninth Circuit held that *Enmons* did not apply in this case, because RICO explicitly prohibits arson. *Id.* at 1329; *see* 18 U.S.C. § 1961(1).

Even if the Hobbs Act did not support the plaintiffs' RICO claim, the court could, upon proper application after hearing, allow the plaintiffs to amend their complaint under Fed.R.Civ.P. 15(a) to plead violations of state extortion law. The plaintiffs could plead violations of Haw.Rev.Stat. § 707–764 (1985) as a predicate act under 18 U.S.C. § 1961(1), which explicitly includes "extortion ... chargeable under State law." Haw.Rev.Stat. § 707–764 is broad enough to include the plaintiffs' allegations. *Cf. Yellow Bus Lines v. Drivers, Chauffeurs & Helpers Local Union 639,* 839 F.2d 782, 789 (D.C.Cir.1988) (Plaintiff employer sued union under RICO for damages suffered during a recognition strike; plaintiff did not base predicate acts of extortion on the Hobbs Act, but D.C. and Maryland statutes).

(iii) Pattern of racketeering activity.

The pattern of racketeering activity requires at least two acts of racketeering activity, 18 U.S.C. § 1961(5). As The Court said in *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14, "'Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" (quoting 18 U.S.C. § 3575(e), a later provision of the RICO bill that the Court said "may be useful in interpreting other sections of the [RICO] Act."). *See also United Energy Owners,* 837 F.2d at 362 (describing requirements for a pattern of racketeering, citing *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

The above discussion of predicate acts indicates that the plaintiffs may not rely on the alleged violation of 18 U.S.C. §§ 1341, 1343 to support their RICO claim, and that the perjury may be a predicate act only if it is part of a larger pattern of racketeering activity. Thus, everything really hinges on whether the defendants may proceed on their extortion claims. The Hobbs Act supports their RICO claim. For this motion, the alleged acts of extortion and the perjury support the pattern of racketeering requirement. The pattern of racketeering requirement therefore is met.

### (iv) Affected "enterprise."

■ The defendants argue the plaintiffs have not satisfied the "enterprise" requirement because they do not identify the affected "enterprise." They argue this omission defeats the plaintiffs' RICO claim. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984); *White v. Beer*, 679 F.Supp. at 210–11 (RICO count deficient because plaintiff did not plead adequately the existence of an enterprise; to survive Rule 12(b)(6) or 56 motion, plaintiff must allege that the "enterprise" is a continuing operation and that the acts are related to a common purpose; plaintiff did not describe the structure of the enterprise, its purpose, or that it had no obvious terminating goal or date) (citing *United States v. Ianniello*, — U.S. —, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987)).

The plaintiffs do not identify the "enterprise." At the hearing, the plaintiffs stated the affected "enterprise" was C & W and its materials suppliers. They conceded that they did not properly plead the "enterprise" requirement in their complaint. The court will determine the sufficiency of plaintiffs' characterization of C & W and its suppliers as the affected "enterprise" if and after the plaintiffs have filed a motion for leave to amend.

### (v) Prohibited activities.

The plaintiffs allege that the activities affect interstate commerce. This satisfies the prohibited activities requirement.

### (vi) Resultant injury.

The plaintiffs allege resultant injury. This satisfies the resultant injury requirement.

### b. Conclusion.

The plaintiffs have not yet alleged a viable RICO claim. The alleged violations of the wire and mail fraud statutes as plead cannot support the RICO claim. Their allegations of an affected "enterprise" are deficient. The court *dismisses* the RICO claim *with leave to file a motion to amend.* Rule 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### c. Defendants' claim that plaintiffs' RICO claims are preempted by federal labor law.

The defendants argue that the plaintiffs' RICO claims are preempted by federal labor law. They cite no case authority for this proposition. The court disregards it. *See Thordarson*, 646 F.2d at 1330–31; *cf. MHC Inc. v. Mine Workers, UMW*, 1370 F.Supp. 685 (1988 E.D.Ky.), Civil RICO Report No. 45, at 1–3.

### d. Defendants' claim that the plaintiffs have not satisfied the conspiracy requirement of 18 U.S.C. § 1962(d).

■ While the plaintiffs may have more artfully pled their RICO claim, the court must assume the veracity of plaintiffs' allegations that the defendants conspired to commit the above described predicate acts. It may reasonably infer from such allegations that the defendants also conspired to conduct the affairs of an enterprise through such acts.

### 6. Plaintiffs' State Antitrust Claims.

■ The plaintiffs bring three claims under Hawaii's antitrust laws: Haw.Rev. Stat. § 480–4 (conspiracy in restraint of trade), Haw.Rev.Stat. § 480–2 (unfair trade practice), and Haw.Rev.Stat. § 480–6 (refusal to deal). The defendants argue the state antitrust claims are preempted by federal labor law and by the specific exclusion of Haw.Rev.Stat. § 480–10. The defendants rely principally on *Connell Constr. Co. v. Plumbers & Steamfitters Local Union 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1974) to support their federal preemption argument.

The Supreme Court stated regarding the preemption of state antitrust claims:

> Although we hold that the union's agreement with Connell is subject to the federal antitrust laws, it does not follow that state antitrust law may apply as well. The Court has held repeatedly that federal law pre-empts state remedies that interfere with federal labor policy or with specific provisions of the NLRA. [citations omitted] The use of state antitrust law to regulate union activities in aid of organization must be preempted because it creates a substantial risk of conflict with the policies central to federal labor law.
>
> . . . . . .
>
> Because employee organization is central to federal labor policy and regulation of organization procedures is comprehensive, federal law does not admit the use of state antitrust law to regulate union activity that is closely related to organizational goals. Of course, other agreements between unions and nonlabor parties may be subject to state antitrust laws. *See Teamsters v. Oliver,* [358 U.S. 283] *supra,* at 295–97 [79 S.Ct. 297, 304–305, 3 L.Ed.2d 312] [ (1959) ]. The governing factor is the risk of conflict with the NLRA or with federal labor policy.

*Connell,* 421 U.S. at 635–37, 95 S.Ct. at 1841–42.

This suit implicates federal labor regulation. Plaintiffs' second claim is for the defendants' alleged secondary boycott of C & W in violation of 29 U.S.C. § 187(b), and § 158(b)(4).

Indeed, the case is a classic secondary boycott case, whereby the union allegedly attempted to force C & W to sign a contract with it. This characterization of the case, then, brings its state antitrust claims within the preemptive ambit of *Connell.*

The Ninth Circuit, in *California State Council of Carpenters v. Associated General Contractors of California, Inc.,* 404 F.Supp. 1067 (N.D.Cal.) (Peckam, J.), *rev'd on other grounds,* 648 F.2d 527, 540 (9th Cir.1980), *reversed,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1982), has followed *Connell.* Judge Peckam stated:

While the Supreme Court in *Connell, supra,* was bitterly split, 5–4, over whether the plaintiffs there could state a cause of action against the union under the federal antitrust laws, 421 U.S. at 636, ..., [95 S.Ct. at 1842], the dissenters explicitly noted their agreement with the conclusion of the majority that the application of the state antitrust laws was pre-empted by federal labor and antitrust policies. *See Connell, supra,* 421 U.S. at 654 ... n. 13 [95 S.Ct. at 1851 n. 13].

404 F.Supp. at 1072.

Moreover, Haw.Rev.Stat. § 480–10 provides:

> This chapter [480] shall not apply to the conduct or activities of labor organizations or their members which conduct or activities are regulated by federal or state legislation....

The alleged misconduct of the union and its members is regulated by federal labor law specifically in 29 U.S.C. § 187 and 158, as discussed above. The plaintiffs claims have sued under Haw.Rev.Stat. chapter 480, which is entitled "Monopolies; Restraint of Trade." Part I of Chapter 480 contains the antitrust provisions, which includes the statutes under which the plaintiffs sue, §§ 480–2, 480–4, 480–6. *See* 9 Haw.Rev.Stat., at 24–25 (table of contents). This brings the plaintiffs' Chapter 480 claims within the preclusive ambit of *Connell* and § 480–10. Plaintiffs' state antitrust claims are DISMISSED.

### 7. *Plaintiffs' Interference with Economic Advantage and/or Inducement to Breach of Contract.*

The plaintiffs allege the defendants interfered with the prospective economic advantage of C & W and/or induced others to breach their contract(s) with C & W. The defendants argue this claim is preempted by federal law, citing principally, *San Diego Building Trades Counsel v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Local 926 Int'l Union of Operating Engineers v. Jones,* 460 U.S. 1435, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983); *Local 20, Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280

(1964); and *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

Judge Pfaelzer, in *Adolph Coors Co. v. Sickler,* 608 F.Supp. 1417 (C.D.Cal.1985), has most lucidly analyzed the problem. In *Adolph Coors,* the plaintiff beer company entered into a contract with a public television station regarding the station's annual auction. The beer company would provide financial support and manpower, and the station would promote its auction as "Coors Day." An agent of the local AFL–CIO—which had organized a boycott of the beer company—allegedly threatened the station's president and employees with violence concerning the station's "Coor's Day" arrangement with the beer company. The agent also threatened mass picketing of the auction and jamming of its phone lines during the auction. The plaintiff beer company claimed these alleged threats induced the television to breach its contract with the beer company. The plaintiff sued the defendant for intentional interference with contractual relations. It also sued the defendant for secondary boycott under 29 U.S.C. § 187(b). The defendant moved to dismiss, arguing that the state claim claim was preempted by federal labor law. *Id.* at 1419–21.

Judge Pfaelzer examined the preemption argument in light of relevant Supreme Court authority, and concluded that when conduct at issue is arguably prohibited or protected by the NLRA, otherwise applicable state law is generally preempted. *Id.* at 1422 (citing *Farmer v. United Bhd. of Carpenters & Joiners,* 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977)). She noted that the Supreme Court has recognized exemptions to this rule, identifying specifically the exception to preemption for violence. *Id.* at 1422 (citing *UAW v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)); *United Constr. Workers v. Laburnum Constr. Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). *Accord Sears, Roebuck,* 436 U.S. at 204 & n. 25, 98 S.Ct. at 1761 & n. 25 ("This Court has held that state jurisdiction to enforce its laws prohibiting violence ... is not pre-empted by the NLRA.") (citing *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); *Laburnum* )).

Judge Pfaelzer then decided that the state law claims for intentional interference with contractual relations were not preempted. She applied the *Farmer* three part preemption test, paying special attention to the salient factor that a state law claim is not preempted if it is *either* unrelated to the federal claim *or* a function of the particularly abusive manner in which the federally prohibited conduct is accomplished. *Id.* at 1424. She determined that the *Farmer* test was satisfied as to this factor, and overall, because of the manner in which the tort was perpetrated, i.e., through threats of violence. *Id.* Her analysis is convincing, as is the rest of her analysis supporting her conclusion that the state claim at issue in that case was not displaced by federal labor law; e.g., analysis and application of *Local 926, Int'l Union of Operating Engineers v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983) ("same in fundamental respect" standard for preemption).

*Adolph Coors* is on all fours with this case. Both cases involved allegations of threatened violence by defendants that induced a secondary party to breach its contract with the plaintiffs. Both involved companion claims of secondary boycott brought under 29 U.S.C. § 187(b), and defendants' preemption arguments against the state tortious interference with contract claim. The reasoning of *Adolph Coors* is compelling; this court follows it. *Cf. Rainbow Tours, Inc. v. Hawaii Joint Council of Teamsters,* 704 F.2d 1443, 1447 (9th Cir.1983) (state tort for interference with contractual relations based on unlawful mass picketing not preempted by 29 U.S.C. § 187) (citing *Russell; Laburnum* ).

The plaintiffs' interference with economic advantage and/or inducement to breach contract claim is not preempted by federal labor law.

**B. Plaintiffs' Motion for Summary Judgment on Four Claims.**

*1. Plaintiffs' Remaining Claims.*

The plaintiffs move for summary judgment on four of their claims based on

the doctrine of offensive collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1978); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). They argue the perjury convictions of certain individual defendants collaterally estop the defendants regarding liability on these claims. The claims are: (1) federal antitrust, 15 U.S.C. § 1, (2) state antitrust, Haw.Rev.Stat. § 480–4, (3) federal labor law, 29 U.S.C. § 187(b), and (4) tortious interference with contractual relations.

As discussed above, the unfair labor practices claim is barred by the statute of limitations.

As discussed above, genuine issues of material fact remain regarding whether the suppliers had the requisite conspiratorial intent to restrain trade. The perjury testimony cannot establish the conspiratorial intent of the suppliers.

As discussed, the state antitrust claims brought under Haw.Rev.Stat. Chapter 480 are preempted by federal labor law under the authority of *Connell.*

The court does not address the application of offensive collateral estoppel to those claims.

As discussed above, the tortious interference with contractual relations is a viable claim. The court examines the plaintiffs' collateral estoppel argument concerning this claim.

While the court considered the defendants' motion under Rule 12(b)(6) standards, the court considers the plaintiffs' motion under Rule 56 standards. This court must consider materials external to the pleadings to resolve this issue, which is appropriate only for motion brought under Rule 56, not Rule 12. *Rosales v. U.S.,* 824 F.2d 799, 802.

This court is familiar with the standards for summary judgment.

This court is aware of the standards for collateral estoppel. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985) (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *United States v. Geophysical Corp.,* 732 F.2d 693, 697 (9th Cir. 1984); *In re Gottheiner,* 703 F.2d 1136, 1139 (9th Cir.1983)); *(Hernandez v. City of Los Angeles,* 624 F.2d 935, 937 (9th Cir. 1980)).

### 2. *Elements of the Alleged Tort.*

The essential elements of a tortious interference with contract claim under Hawaii law are: (1) contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach the contract, (4) absence of justification on the defendant's part, (5) the subsequent breach of the contract by the third party, and (6) damages to the plaintiff. *Burgess v. Arita,* 5 Haw. App. 581, 594, 704 P.2d 930 (1984) (citing 3 J. Dooley, *Modern Tort Law–Liability & Litigation* § 44.02 (B. Lindahl rev. 1984); *Bendix Corp. v. Adams,* 610 P.2d 24 (Alaska 1980)). *See also Restatement (Second) of Torts* § 766, at 7 (1977) (intentional interference with the performance of contract by third person); *see generally* W. Keeton, *Prosser and Keeton on Torts* § 129 (5th ed. 1984) (interference with contractual relations); *id.* § 130 (interference with prospective advantage).

The plaintiffs submit the perjury indictments and convictions of the individual defendants and an employee of one of C & W's materials suppliers. The latter perjury conviction is irrelevant to the instant motion; that employee is not a party to this action.

The perjured statements of Nishibayashi do not relate to C & W's suppliers or others under contract with C & W. *United States v. Torres and Nishibayashi,* Cr. No. 82–01795, Superseding Indictment, at 1–4 (D.Haw. Feb. 4, 1983) (perjury counts one through four of Nishibayashi). Likewise, the perjured statements of Kupau do not relate to C & W's suppliers or others under contract with C & W. *United States v. Kupau,* Indictment, at 1–10, Cr. No. 83–01721 (D.Haw. Aug. 18, 1983).

■ The only relevant perjured testimony the plaintiffs submit is that of Torres. The jury determined that Torres perjured himself when he swore in an affidavit:

To the best of my knowledge, I am not aware of any person related to Local 745 that has forced or asked any individual or employer to refuse to work for C & W construction.

I expressly deny that I have at any time contacted any employee or employer to force or encourage an employee or employer to refuse to perform any work relating to C & W Construction.

*United States v. Torres and Nishibayashi,* Cr. No. 82–01795, Superseding Indictment, at 6–7 (D.Haw. Feb. 4, 1983).

The converse of these statements can be paraphrased:

I know some person(s) related to Local 745 who has/have forced or asked some individual(s) or employer(s) to refuse to work for C & W construction.

I admit that I contacted some employee(s) or employer(s) to force or encourage him/them to refuse to perform work relating to C & W Construction.

Torres is collaterally estopped concerning the issues implicated in those statements. The issues were actually litigated and necessarily determined by a court. *Davis & Cox.* The plaintiffs have borne their burden of pleading and proving what issues were decided in their favor in the previous action, i.e., that Torres lied concerning coercion of parties under contract with C & W. *Davis & Cox; Hernandez.*

The court made specific findings concerning Torres's perjury counts; the plaintiffs need not provide a record sufficient to reveal the controlling facts and identify the exact issues litigated in the prior action. *Davis & Cox.* The court will give *necessary inferences* from the judgment preclusive effect. *Id.* Thus, there is no doubt concerning the import of Torres's perjury conviction as it relates to coercing *some* third parties not to deal with C & W. *Id.; Harris v. Jacobs.*

Application of offensive collateral estoppel is proper. There was a "full and fair" opportunity in the perjury trial for Torres

to litigate the issue for which collateral estoppel is sought, *Parklane Hosiery,* 439 U.S. at 326–33, 99 S.Ct. at 649–53. *Blonder–Tongue,* 402 U.S. at 332–33, 91 S.Ct. at 1444–45. The plaintiff could not have joined in the earlier action, as it was a criminal case; such application would not be unfair to defendant Torres. He had a full and fair opportunity to litigate this issue. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 651–52.

This leaves two questions. First, is the testimony sufficient to meet the plaintiffs' burden of showing an absence of material fact concerning the tortious interference claims? Second, can the perjury of Torres also estop the union and other individual defendants on the tortious interference claim? The court will not address the second question, as the first question is dispositive of the overall issue of whether to grant the plaintiffs' motion for summary judgment.

Torres' perjured statements in themselves cannot substantiate the plaintiffs' motion for summary judgment. His statements do not identify any particular third party or parties with whom C & W had contracts. C & W apparently had contracts with numerous materials suppliers (e.g., glass, concrete block, cement, crushed rock, and lumber) and others providing services for C & W. Torres' statements do not establish a nexus between the misconduct inferable from the perjury and any particular supplier or other person under contract with C & W. While the statements represent cogent evidence supporting the plaintiffs' tortious interference with contract claim, they are not sufficient in themselves to substantiate the plaintiffs' summary judgment motion. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630. Specifically, Torres's statements do not meet the plaintiffs' initial burden of showing an absence of material fact concerning the plaintiffs' tortious interference with contract claim, which necessarily relates to specific entities concerning specific contracts.

If the statements did permit the plaintiffs to meet their initial burden, the plain-

tiffs would be entitled to summary judgment, because the defendants would be precluded from meeting their counterburden by the Court's December 5, 1985 Order. The Order explicitly bars the defendants from sumbitting evidence on the plaintiffs' "inducement to breach of contract and interference with prospective economic advantage" claim. Order, at 11.

The court applies the doctrine of offensive collateral estoppel to Torres' statements. Nevertheless, the statements do not satisfy the plaintiffs' initial burden for a summary judgment motion under the *T.W. Elec.* standard. The plaintiffs' motion for summary judgment on the state tortious interference claims is DENIED.

### III. CONCLUSION.

The following claims are dismissed:

1. Second Claim, 29 U.S.C. § 187(b): statute of limitations.

2. Fourth, Fifth, and Sixth Claims, Haw.Rev.Stat. §§ 480–4, 480–2, 480–6: preemption by federal labor law under *Connell.*

3. Eighth, Ninth, Tenth, and Eleventh Claims, negligent and intentional infliction of emotional distress: statute of limitations under Haw.Rev.Stat. § 657–7.

The court also dismisses the plaintiffs' civil RICO claim, with leave to file a motion to amend their complaint to plead the "enterprise" requirement. The court does not dismiss the plaintiffs' federal antitrust and state interference with economic advantage/inducement to breach contract claims.

The court denies the plaintiffs summary judgment on all four of its claims.

After today, *two* claims remain before the court: federal antitrust and state tortious interference with contract. The civil RICO claim may yet be viable, if the plaintiffs amend their complaint to plead properly the "enterprise" requirement.

IT IS SO ORDERED.